RAILROAD ROOFING & BUILDING SUPPLY CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. FINANCIAL FIRE & CASUALTY CO., A FLORIDA CORPORATION, ET AL., DEFENDANTS, AND THE STATE OF NEW JERSEY—DEPARTMENT OF INSURANCE, DEFENDANT-RESPONDENT, AND NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANT-APPELLANT, AND MOFFATT EXCESS, INC., DEFENDANT.

THE WHITE MOTOR CREDIT CORPORATION, PLAINTIFF, v. BAR–DOW CORP., INDIVIDUALLY AND IN THE NAME OF RICHARD SCHAUB, COMMISSIONER OF BANKING, ET AL., DEFENDANTS, AND JAMES F. DOWLING, INDIVIDUALLY AND TO THE EXTENT OF HIS INTEREST, IF ANY, IN BAR-DOW CORPORATION, DEFENDANT-THIRD PARTY PLAINTIFF-RESPONDENT, v. JAMES J. SHEERAN, INDIVIDUALLY AND AS COMMISSIONER OF THE DEPARTMENT OF INSURANCE, THIRD PARTY DEFENDANT-RESPONDENT, AND T. M. BOYD, INDIVIDUALLY AND AS EXECUTIVE SECRETARY OF THE NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANT-APPELLANT, AND THE ALL STATEWIDE AGENCY, A CORPORATION ET AL., THIRD PARTY DEFENDANTS.

ERNEST J. BUCCINI, M.D., DR. EMANUEL KLOSK, HEADLINERS, INC., P. C. M. MOLDING COMPANY, EDWARD JOFFE, ELIZABETH BOARD OF EDUCATION, FRANK ZACCARDI, M. D., DR. A. DIRENZO, KARRINGTON FARMS, INC., D/B/A FOUR SEASONS FARM, BYRAM ROAD HOUSE, INC., JOHN LEHITA, ANNA LEHITA, EDWARD FAYE, MARY FAYE, RICHARD STACK, ESTATE OF CARL HAIPT, ROBERT O. POWERS, GEORGE F. JOHNSON, DAVID J. KENDALL, LEWIS ROSENBLATT, D/B/A SPARTA MEDICAL ASSOCIATES, A PROFESSIONAL ASSOCIATION, THE J. E. BURKE COMPANY, A CORPORATION OF WISCONSIN, DEL-CHUCK CORP., CHARLES L. PARTIE AND ROBERT TREAT SAVINGS & LOAN, PLAINTIFFS-RESPONDENTS, v. STATE OF NEW JERSEY, JAMES J. SHEERAN, INDIVIDUALLY AND AS COMMISSIONER OF THE DEPARTMENT OF INSURANCE OF THE

STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS, AND T. M. BOYD, INDIVIDUALLY AND AS EXECUTIVE SECRETARY OF THE NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANT-APPELLANT, AND JOYCE LUCIANO ET AL., DEFENDANTS.

Argued January 12, 1981—Decided March 26, 1981.

386

*Richard R. Spencer, Jr.*, argued the cause for appellants (*Stryker, Tams & Dill*, attorneys; *Richard R. Spencer, Jr.*, and *William J. Heller* on the briefs).

*Peter D. Pizzuto*, Deputy Attorney General, argued the cause for respondent Commissioner of Insurance (*John J. Degnan*, Attorney General of New Jersey, attorney; *Stephen Skillman*, Assistant Attorney General, of counsel).

*Theodore A. Gardner* argued the cause for respondent James F. Dowling (*Timothy K. Madden*, Director, Hudson County Legal Services, Corp., attorney).

*John I. Lisowski* argued the cause for respondents Ernest J. Buccini, et al. (*Morgan, Melhuish, Monaghan & Spielvogel*, attorneys).

*Allan Maitlin* argued the cause for respondent Railroad Roofing & Building Supply Company (*Feurstein, Sachs & Maitlin,* attorneys).

*Eugene M. Haring* submitted a brief on behalf of *amici curiae* Alliance of American Insurers, American Insurance Association, National Association of Independent Insurers, and State Farm Mutual Automobile Insurance Company (*McCarter & English,* attorneys; *Ronald J. Hedges* on the brief).

*Arthur R. Schmauder* submitted a brief on behalf of *amicus curiae* Risk and Insurance Management Society, Inc. (*Shanley & Fisher,* attorneys; *LeBoeuf, Lamb, Leiby & Macrea,* Esquires, members of the New York bar, and *Reginald Beane,* Esquire, a member of the Massachusetts bar, of counsel).

The opinion of the Court was delivered by

SULLIVAN, J.

The issue presented on appeal in these three consolidated cases [1] involves the applicability of the New Jersey Property-Liability Insurance Guaranty Association Act, *N.J.S.A.* 17:30A–1 *et seq.* (Guaranty Act), as it existed prior to February 22, 1980, to surplus lines insurance carriers.[2] The particular question of insurance law common to these cases is whether New Jersey claims covered by policies issued by out-of-state surplus lines insurers, who thereafter became insolvent, fall within the protective scope of the Guaranty Act. Two trial courts ruled that the provisions of the Guaranty Act did not extend to surplus lines insurers. In consolidated proceedings, the Appellate Division reversed on the grounds that the Act protected New Jersey

---

[1] The procedural path of the three claims underlying the instant appeal is quite complex. It included consolidation of two of the three claims at the trial court level by allowing the party in one claim to intervene in a second proceeding.

[2] Pursuant to a February 22, 1980 amendment, the Guaranty Act now expressly excludes surplus lines insurers from its coverage. See *N.J.S.A.* 17:30A–5(e) & (f).

policyholders of surplus lines carriers. Certification was granted to review this question. 84 *N.J.* 441 (1980). We now reverse.

Surplus lines insurance involves New Jersey risks which insurance companies authorized or admitted to do business in this State have refused to cover by reason of the nature of the risk.[3] In such cases, coverage may be obtained through a surplus lines agent, licensed under "the surplus lines law" of New Jersey, *N.J.S.A.* 17:22–6.40 *et seq.*, to "export" the insurance coverage—place it with an "unauthorized" insurer. The surplus lines law essentially regulates the surplus lines agents who are licensed thereunder. It also imposes limited requirements on unauthorized insurers who wish to become "eligible" to have surplus lines coverage placed with them. *N.J.S.A.* 17:22–6.43(b) & (c), –6.45, –6.46. If the surplus lines agent is unable to place the insurance with an "eligible" surplus lines insurer, however, he may then place the coverage with a surplus lines insurer who has not been granted eligibility, provided such insurer satisfies the requirements of *N.J.S.A.* 17:22–6.45(h). In short, under the surplus lines law surplus lines insurers are not authorized or admitted to transact business in this State. Rather, the insurance is "exported" and placed with them only by a licensed surplus lines agent.

The Guaranty Act was adopted in this State in 1974 in recognition of the need to provide some protection to policyholders of insurance companies which become insolvent. *N.J.S.A.* 17:30A–2(a). The Act applies to all kinds of direct insurance except for specifically enumerated types such as life insurance, accident and health insurance, etc. *N.J.S.A.* 17:30A–2(b). The Act creates a New Jersey Property-Liability Insurance Guaranty Association (Association) and requires all insurers in the

---

[3]Domestic insurers are "authorized" by the Commissioner of Insurance pursuant to *N.J.S.A.* 17:17–1 *et seq.* An insurance company formed by authority of another State or foreign government may be "admitted" to transact the business of insurance in this State. *N.J.S.A.* 17:32–1 *et seq.*

State who write insurance to which the Act applies to be members of the Association as a condition of their authority to transact insurance in this State. *N.J.S.A.* 17:30A–6. The Association is empowered to assess members in amounts necessary to pay the covered claims of an insolvent insurer. *N.J.S.A.* 17:30A–8.[4]

Prior to February 22, 1980, the Act defined "[i]nsolvent insurer" to mean "(1) an insurer admitted or authorized to transact the business of insurance in this State . . . and (2) who is determined to be insolvent . . . ." *L.*1974, *c.* 17:30A–5(e). It also defined "[m]ember insurer" as "any person who (1) writes any kind of insurance to which this act applies . . . and (2) is admitted or authorized to transact the business of insurance in this State." *L.*1974, *c.* 17:30A–5(f). The Association and the New Jersey Department of Insurance never considered surplus lines carriers as such to be admitted or authorized to transact the business of insurance in this State and therefore the Association never attempted to assess them under the Act. Accordingly, insureds in this State holding surplus lines policies from these carriers never paid the policy surcharge for Association assessments.[5] Pursuant to the February 22, 1980 amendments, as heretofore noted, the Act now expressly excludes surplus lines insurers from its coverage.

The relevant facts in the three cases consolidated on appeal are undisputed. They involve two surplus lines insurance carriers, one domiciled in Florida and the other in Wisconsin, with

---

[4]The amount of each assessment is based on premium volume. Under regulations promulgated by the Department of Insurance, the assessment is recouped by the insurance company in the form of a policy premium surcharge paid by each insured. *N.J.A.C.* 11:1–6.1.

[5]In connection with a narrow aspect of the administration of the Guaranty Act, counsel for the Department of Insurance advises that "exportable coverage written by licensed carriers is subject both to the protective provisions of the Act and to the mechanism for funding payment of claims." This is not the situation presented in the instant cases.

whom surplus lines coverage was placed by surplus lines agents in New Jersey. The insurance covered subjects of insurance resident, located or to be performed in New Jersey. Thereafter, and prior to February 22, 1980, these two carriers were adjudicated to be insolvent. The three instant cases are brought by insureds in this State holding surplus lines policies issued by these carriers, seeking a ruling that their claims are protected under the New Jersey Guaranty Act.

The Appellate Division, in an opinion reported at 171 *N.J.Super.* 375 (1979), reversed trial court rulings that the provisions of the Guaranty Act did not extend to surplus lines insurers. It held that coverage existed. This decision was based largely on a liberal construction of the provisions of the Act as called for by *N.J.S.A.* 17:30A–4. Examining the statutory definition of "insolvent insurer," as it existed prior to February 22, 1980, and focusing on the words "admitted . . . to transact the business of insurance in this State" in that definition, the Appellate Division found a legislative intent to include claims against surplus lines insurers within the protective scope of the Guaranty Act.

The New Jersey Guaranty Act is patterned after a model bill prepared under the auspices of the National Association of Insurance Commissioners (NAIC) and thereafter adopted in varying forms by almost every state. The record shows that in the NAIC discussions concerning the model bill, it was not intended that the surplus lines carriers be included within the coverage of the model bill. All of the 47 states which have enacted the model bill, or some variation thereof, presently exclude surplus lines insurers from guaranty coverage either expressly or by statutory interpretation.

The NAIC model bill and the pre-1980 New Jersey Guaranty Act differ, however, in their definitions of the term "insolvent insurer." The NAIC model bill defines "insolvent insurer" as "an insurer *authorized* to transact insurance ·. . . ." The New Jersey Act, though, prior to its 1980 amendment, provided that the identical term meant "an insurer *admitted or authorized* to

transact the business of insurance in this State." *L*.1974, *c.* 17:30A–5(e) (emphasis supplied). No formal legislative history for the Guaranty Act exists but there are voluminous affidavits, letters and contemporaneous memoranda prepared by those involved in the legislative drafting of the Act. All of these latter materials reveal that, while the drafters' unanimous purpose was to exclude surplus lines insurers from coverage,[6] there was some concern that the word "authorized," as used in the model bill, might be construed to include surplus lines carriers. Accordingly, the word "admitted" was added to the statutory definition for the sole purpose of making it clear that surplus lines carriers were excluded. For example, in a March 28, 1974 communication from the Assistant Counsel to the Governor to the "Senate Committee on Labor, Industry and the Professions" regarding the proposed New Jersey Property-Liability Insurance Guaranty Association Act, Senate Bill No. 1004 signed into law on April 11, 1974, it was stated that

[t]he "insolvent insurer" covered by this act would include both domestic insurance companies and insurers "admitted" to transact the business of insurance in New Jersey. The use of the word "admitted" would therefore exclude "non admitted" surplus line carriers who are only required to file their rates in New Jersey. Such firms include Lloyds of London and similar unusual risk carriers. The insolvent insurer is also further defined as an insurer admitted or authorized to transact the business of insurance in this State at the time the policy was issued or when the insured event occurred.

■ Granted that the Guaranty Act is to be liberally construed to effectuate its remedial purposes, it is manifest that the legislative purpose in adding the word "admitted" to the Act was to make it clear that surplus lines insurers were excluded from the operation of the Act. Moreover, this interpretation is consistent with the provisions of "the surplus lines law" of New Jersey. Under that law, surplus lines insurers do not transact the business of insurance in this State. Rather, such insurance may only be exported—that is, placed with them by a licensed

---

[6]One of the reasons given for this exclusion was that surplus lines carriers have a relatively high rate of insolvency.

surplus lines agent. In short, they are eligible only to receive insurance business from New Jersey but are not authorized or admitted to do business in the State. The use of these two terms in the Guaranty Act, which have technical meanings in the insurance law of this State, indicates that the Legislature intended to restrict covered insolvent insurers to domestic insurers *authorized* to transact the business of insurance in this State under *N.J.S.A.* 17:17-1 *et seq.* and foreign insurance companies *admitted* to transact any class or classes of insurance in this State under *N.J.S.A.* 17:32-1 *et seq.*

■ The amendment to the Guaranty Act, effective February 22, 1980, which specifically excludes surplus lines insurers did not change the essential definition of "insolvent insurer." It merely clarified it to reflect more exactly underlying legislative intent.

The judgment of the Appellate Division is reversed and the judgments of the trial courts hereby reinstated.

*For reversal*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance*—None.