Margarita **BALLESTEROS**, Plaintiff,

v.

**NEW JERSEY PROPERTY LIABILITY INSURANCE GUARANTY ASSOCIATION, Defendant.**

**Civ. A. No. 81–360.**

United States District Court,
D. New Jersey.

Feb. 5, 1982.

---

Foglia & Altieri by John R. Altieri, Hackensack, N. J., for plaintiff.

Stryker, Tams & Dill by William J. Heller, Newark, N. J., for defendant.

OPINION

SAROKIN, District Judge.

On January 5, 1979, Margarita Ballesteros was shot in the foot and injured while in La Vaca Loca Tavern in Elizabeth, New Jersey. The tavern was owned by Jose Gonzales and insured by the Long Island Insurance Company. The insurance policy, issued by the company through its authorized agent in New Jersey, became effective on March 17, 1978, and was due to expire on March 17, 1979. The policy provided that before it could be terminated, the insurance company was required to give at least ten days' written notice of cancellation to the named insured.

During the term of the policy, the Long Island Insurance Company suffered severe financial difficulties and, on November 13, 1978, the Supreme Court of the State of New York ordered the New York Superintendent of Insurance to take possession of the assets of the company and to rehabilitate it pursuant to Article XVI of the New York Insurance Law. The order also terminated, as of December 13, 1978, all policies issued by the company to policyholders outside of the State of New York. Acting under the authority granted by the order, the Superintendent of Insurance issued Notices of Cancellation which terminated, effective December 13, 1978, all policies embraced by the court order. The notices of cancellation were dated November 13, 1978, and were allegedly mailed by the New York Insurance Department on December 4, 1978. Jose Gonzales, the named insured, denies seeing the notice until one and a half months after the incident of January 5, 1979.

In May 1979, plaintiff filed a complaint against Mr. Gonzales alleging negligence. Mr. Gonzales defaulted and judgment in the amount of $131,657.00 together with $39.20 in costs was awarded to plaintiff. Plaintiff then instituted this action against the New Jersey Guaranty Association, claiming that the Association was liable on the claim that Mr. Gonzales had against the now defunct

Long Island Insurance Company. The Association denied liability and alleged that Mr. Gonzales' policy was terminated by the New York court's order of rehabilitation and that, therefore, Mr. Gonzales did not have a "covered claim" against the insurer within the meaning of the New Jersey Property Liability Insurance Guaranty Act.

## DISCUSSION OF THE LAW

The New Jersey Property Liability Insurance Guaranty Act was adopted in New Jersey in 1974 as a mechanism to protect this state's policyholders and claimants from the "devastating financial effects consequent upon an insurer's insolvency." *Railroad Roofing & Building Supply Co. v. Financial Fire & Casualty Co.*, 171 N.J.Super. 375, 379, 409 A.2d 300 (App.Div.1979) *reversed on other grounds*, 85 N.J. 384, 427 A.2d 66 (1981). The Act implements its purposes through the establishment of a Guaranty Association, which is obligated to pay "covered claims" against an insolvent insurer incurred prior to or 30 days after the determination of insolvency. N.J.Stat. Ann. § 17:30A–8(a)(1). A "covered claim" is one arising out of and within the insurance coverage. N.J.Stat.Ann. § 17:30A–5(d). At the center of the controversy in this matter is whether the insured had a "covered claim" within the meaning of the Guaranty Act. The answer to this question requires an analysis of the Uniform Insurers Liquidation Act and the constitutional validity of the New York court's order.

The Uniform Insurers Liquidation Act has been adopted by both New Jersey and New York. N.J.Stat.Ann. § 17B:32–1, *et seq.*; N.Y. Insurance Law § 517, *et seq.* (McKinney). The Act provides for a uniform, orderly and equitable method of making and processing claims against defunct insurers and provides for a fair procedure to distribute the assets of defunct insurers. *Vlasaty v. Avco Rent-A-Car System, Inc.*, 60 Misc.2d 928, 304 N.Y.S.2d 118, 120 (Sup. Ct.1969).

■ In New York, the Superintendent of Insurance commences suit under the Act by making application to the Supreme Court "in the judicial district in which the principal office of the insurer involved is located." N.Y. Insurance Law § 526 (McKinney). Here, application for rehabilitation of the Long Island Insurance Company was made to the First Judicial District in New York State instead of the Second Judicial District, where the insurance company was located. Plaintiff therefore contends that the order issued by the court terminating the policies of out-of-state insureds was void because the court lacked subject matter jurisdiction. Plaintiff's argument, however, fails to distinguish venue from subject matter jurisdiction. Under the New York State Constitution, the Supreme Court is a court of general jurisdiction. N.Y.Const. art. 6 § 7. Unlike venue, which may be waived and does not relate to the power of the court to hear the case, see *Agchem Service Corp. v. J. K. Hurd & Son*, 75 Misc.2d 926, 349 N.Y.S.2d 936 (N.Y.Cty. Ct.1973), this broad jurisdiction of the court may neither be limited nor qualified by the state legislature. *People v. Darling*, 50 App.Div.2d 1038, 377 N.Y.S.2d 718, 720 (1975). If plaintiff's interpretation of Section 526 of the Insurance Law were correct, then the statute would unconstitutionally qualify the Supreme Court's power by establishing geographic boundaries on the power of a branch of the court to hear a case. To avoid such a result, this court finds that Section 526 relates only to venue and does not detract from the court's broad jurisdiction. Therefore, because the court had the power to issue the rehabilitation order, plaintiff's argument that the order is void for jurisdictional reasons, must be rejected.

■ Plaintiff also contends, however, that even if the order were rendered by a court with jurisdiction over the subject matter, the order could have no extraterritorial effect because the New York court did not have *in personam* jurisdiction over Jose Gonzales, the named insured. This argument misconceives the nature of the rehabilitation action. A rehabilitation proceeding is an *in rem* action in which the state court generally has exclusive control over the assets of the impaired insurance

company. *Mathias v. Lennon*, 474 F.Supp. 949, 957 (S.D.N.Y.1979).

■ The need for giving one state exclusive jurisdiction over delinquency proceedings has long been recognized in the courts:

Experience has demonstrated that, in order to secure an economical, efficient, and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be intrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies, for the reasons adverted to by Mr. Justice Cardozo in *Clark v. Williard*, 292 U.S. 112 [54 S.Ct. 615, 78 L.Ed. 1160].

*Motlow v. Southern Holding & Securities Corp.*, 95 F.2d 721, 725–26 (8th Cir.), *cert. denied*, 305 U.S. 609 [59 S.Ct. 68, 83 L.Ed. 388] (1938).

When the New Jersey legislature adopted the Uniform Insurers Liquidation Act, it specifically recognized the benefits of centralizing the management over delinquency proceedings in the courts of one state. The Act provides that claims of New Jersey residents against out-of-state insurers must be filed in the state where delinquency proceedings are instituted unless an ancillary receiver has been appointed in New Jersey. N.J.Stat.Ann. § 17B:32–19(a). The Act also provides that where ancillary proceedings have not been commenced in New Jersey, controverted claims are governed by the laws of the foreign state. Thus, not only was the New York court's order consistent with due process, but the proceedings from which the order arose have the sanction of New Jersey law. Therefore, because the New York court properly had jurisdiction and control over the assets, it

had the authority to terminate the subject policies, notwithstanding that the effect of the termination order was to cancel insurance contracts made between the company and its non-resident policyholders.

■ Plaintiff also contends that the due process rights of the insured were violated because the insurer failed to notify the insured of the institution of the rehabilitation proceedings. Plaintiff's argument, again, however, misconceives the nature of the rehabilitation proceeding, which is designed to immediately preserve the assets of an impaired company. Section 526 of the New York Insurance Law specifically provides that after the Superintendent commences the action, a hearing shall be held "without delay." At the hearing, the court must fashion relief in accordance with the "interests of policyholders, creditors, stockholders," and other members of the public. N.Y. Insurance Law § 526 (McKinney). If notice were required to be issued to all policyholders, and all policyholders had a right to participate in the hearing, the attendant delay would defeat the policyholders' interest in preventing the dissipation of the company's assets. Because the interests of policyholders are represented by the Superintendent and protected by the state court, due process is not violated by the failure to give notice of the rehabilitation proceedings to the policyholders. See *Pastor v. National Republic Bank of Chicago*, 76 Ill.2d 139, 28 Ill.Dec. 535, 390 N.E.2d 894, 899 (Ill.1979).

■ The court also finds without merit plaintiff's argument that the New York court's cancellation of all policies held by nonresidents of the state violated the equal protection rights of the insured and the constitutional prohibition against the impairment of contracts.[1] The Equal Protection Clause is not violated merely because the state has made distinctions between groups. See *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110, 69 S.Ct. 463,

---

1. The court has dismissed plaintiff's constitutional arguments because they are clearly without merit. It should not, however, be inferred from the court's consideration of the substance of plaintiff's claims that the court has determined that plaintiff has standing to assert those claims.

465, 93 L.Ed. 533 (1949). In the area of economics and social welfare, classifications are allowable so long as they are rationally related to a legitimate state purpose. See *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). Merely because the classification distinguishes residents from nonresidents does not require application of a stricter test. *Ward v. Board of Examiners of Engineers, Architects and Surveyors of the Commonwealth of Puerto Rico*, 409 F.Supp. 1258, 1259 (D.P.R.1976), *affirmed*, 429 U.S. 801, 97 S.Ct. 37, 50 L.Ed.2d 64 (1977). Here, the New York court, acting in the interests of the policyholders and the public, determined that in order to successfully rehabilitate the company, it was necessary to cancel the policies held by non-resident insureds. The court's action had a rational basis. The court was attempting to restrict the business of the company and ease the costs of administration by requiring that the company do its business locally. Because the New York court's order was a rational attempt to reduce the potential liabilities of the company and to reduce administrative expenses, this court finds that the equal protection rights of the insured were not violated. See *Mathias v. Lennon*, 474 F.Supp. 949, 957 (S.D.N.Y.1979).

 Plaintiff also contends that the New York court's cancellation of the policies of out-of-state insureds violated the constitutional prohibition against the impairment of contractual obligations. U.S. Const. art. 1 § 10, cl. 1. The prohibition against impairment of contractual obligations affords no protection against judicial action, it merely protects against the enactment of legislation which interferes with existing contract rights. *Barrows v. Jackson*, 346 U.S. 249, 260, 73 S.Ct. 1031, 1037, 97 L.Ed. 1586 (1953). Here, not only was the contract formed after the legislation was enacted, but the act about which plaintiff complains was an act of the judiciary and, therefore, is not within the purview of the Contracts Clause.

Plaintiff further argues that the insured did not receive adequate notice of the court-ordered termination of the policy and that, therefore, the policy was never cancelled. Under the terms of the policy, the insurance company was required to give at least ten days' written notice of cancellation to the insured. Plaintiff contends that even if notice were sent, as defendant claims, on December 4, 1978, that less than ten days' notice was provided because the termination was ordered effective as of December 13, 1978. In addition, plaintiff contends that the termination provision is invalid because, under New Jersey law, all policies issued by insurance companies doing business in the state must provide for thirty days' written notice of cancellation to the insured and that any policy provision requiring less notice shall be "null and void." In effect, plaintiff argues that if the policy did not provide for thirty days' notice, that the right to terminate either by the insurer or the court is lost.

 Although New Jersey law requires that insurers give at least thirty days' notice of cancellation to insureds, N.J.A.C. § 11:1–5.5, a court-ordered termination of policies pursuant to a plan of rehabilitation is distinct from the contractual right of the insurer to terminate policies. As noted previously, in a rehabilitation proceeding, the court is under an obligation to act speedily to preserve the assets of the impaired company. The laws of both New Jersey and New York recognize the need for prompt judicial action and also recognize the need to impart notice of the court's action through the least restrictive means available. Thus, constructive notice of the court order is all that need be given to make the order effective in both states. Notice is given when the order is filed in "the office where instruments affecting title to property are required to be filed or recorded. . . ." N.J.Stat.Ann. § 17:30C–15(c); N.Y. Insurance Law § 518 (McKinney).

Here, the order of the New York court was filed in the Clerk's Office in New York County, instead of the Register's Office, where the order was required to be filed. In addition, the order was never filed in New Jersey. The court must therefore de-

termine whether actual notice of a court-ordered termination will suffice where there is no constructive notice, and, if so, whether the notice given to the insured, Jose Gonzales, was sufficient. Although the latter question requires a factual determination, *Weathers v. Hartford Insurance Group*, 77 N.J. 228, 234, 390 A.2d 548 (1978), the parties have jointly requested that the court decide the issue on the moving papers submitted.

 The purpose of requiring that notice be given prior to the cancellation of an insurance policy is to allow the insured ample time to locate another insurer and thereby avoid an interruption in coverage. If constructive notice, through public recordation, satisfies this purpose, then *a fortiori*, actual notice, which is more likely to come to the attention of the insured, should be legally sufficient. Therefore, so long as actual notice was provided and the insured had a reasonable amount of time to act upon that notice, the termination is valid.

Here, there is overwhelming evidence in the record to indicate that notice was sent to the insured on December 4, 1978, thirty two days prior to the incident giving rise to the claim in this matter. It is undisputed that the cancellation notices were printed by computer; that notices were prepared for all policyholders residing outside of the state of New York; that notices were then sent to the claims department; that the claims department placed a copy of each notice into a file bearing the name of the insured; that the original notices were stuffed into envelopes; that the envelopes were stacked and brought to the mailroom, where they were stamped and shipped; that a computer list was prepared which verified the names of persons for whom cancellation notices were prepared; and that this list was sent to the Liquidation Bureau of the New York State Insurance Department. Based on these undisputed facts, the court finds that a notice of cancellation was sent to the insured, Jose Gonzales, on December 4, 1978. This finding is supported by Mr. Gonzales' own testimony. Mr. Gonzales never denied having received the notice, he only denied having "seen" it until one and a half months after Mrs. Ballesteros was injured in his bar. Because the court finds that notice was mailed to the insured on December 4, 1978, there was no "covered claim," within the meaning of N.J.Stat.Ann. § 17:30A–5(d), for which the Guaranty Association would be liable.

Plaintiff contends that, if a policy does not provide for at least thirty days' notice of cancellation, that a court is without power to order a termination pursuant to a plan of rehabilitation. The court finds, however, that all that is necessary to effectuate a court-ordered cancellation of policies is that reasonable notice of the cancellation be sent to the policyholders. Here, even if the court were to accept, and it does not, that New Jersey law requires thirty days' notice of cancellation pursuant to a plan of rehabilitation, this requirement was met in this case.

Because the order of termination complied with the provisions of New York's Insurance Law, had no constitutional infirmity, and did not offend New Jersey's public policy, the court concludes that there was an effective cancellation of the insured's policy. Summary judgment therefore will be entered in favor of defendant, Guaranty Association. Counsel for the defendant shall submit an appropriate order to the court.