**Roberta CHANDLER, Plaintiff,**

**v.**

**OMNICARE/THE HMO, INC., a New Jersey Corporation, and Spencer Gifts, Inc., a New Jersey Corporation, Defendants.**

**Civ. A. No. 90–1859 (JFG).**

United States District Court,
D. New Jersey.

Dec. 5, 1990.

Salvatore B. Daidone, Voorhees, N.J., for Roberta Chandler.

Stephen P. Tasy, Deputy Atty. Gen., Trenton, N.J., for Omnicare/The HMO, Inc.

William M. Honan, Horn, Kaplan, Goldberg, Gorny & Daniels, Atlantic City, N.J., for Spencer Gifts, Inc.

## OPINION

GERRY, Chief Judge.

### FACTS & PROCEDURAL HISTORY

Plaintiff Roberta Chandler [hereinafter, "plaintiff"] is a private citizen, formerly employed by defendant Spencer Gifts. Through her former employer, Chandler obtained health insurance coverage from defendant Omnicare/The HMO, Inc. [hereinafter, "Omnicare"].

On March 31, 1988, Kenneth D. Merin, former Commissioner of the New Jersey Department of Insurance, found Omnicare to be insolvent within the meaning of N.J. S.A. § 17B:32–1(a) (West 1971). Accordingly, on April 22, 1988, the Honorable Paul R. Porreca, J.S.C., entered an Order of Rehabilitation of Domestic Health Maintenance Organization with respect to Omnicare. The court further appointed former Commissioner Merin and his successors in office (currently Commissioner Samuel Fortunato) to act as Rehabilitator for Omnicare. Finally, the court, pursuant to its authority under N.J.S.A. § 17B:32–5(b), included in the Order of Rehabilitation an injunction prohibiting the maintenance or further prosecution of any legal action against Omnicare.[1]

Plaintiff's employment terminated on or about June 6, 1989. Following her termination, defendant Omnicare denied plaintiff's application for continued benefits because she allegedly did not meet the application deadline. On March 8, 1990, plaintiff brought suit in the Law Division

---

1. On September 25, 1990, The Honorable Robert E. Francis, Judge of the Chancery Division of the Superior Court of New Jersey, signed an Order authorizing Commissioner Fortunato to liquidate Omnicare. *Fortunato v. Omnicare/The HMO, Inc.,* # C–16202–88. On that same day, The Honorable Judith H. Wizmur, U.S.B.J., signed an Order approving the Chancery Division Order. *In re Compaas Health Systems, Inc.,* # 89–00880.

We find that the Liquidation Order has no effect on the court's holding in this case, however, since Paragraphs 2 and 12 of the Chancery Division's Liquidation Order (1) vest Commissioner Fortunato "with all powers and authority expressed or implied under the provisions of N.J.S.A. 17B:32–1 *et seq.* as being reasonable and necessary to carry out the intent of the Legislature in a liquidation proceeding," and (2) continue the injunction against litigation by Omnicare's creditors originally set forth in the Omnicare Rehabilitation Order.

against Omnicare and Spencer Gifts to compel continuation of her Omnicare health coverage and for damages. *Chandler v. Omnicare, et al.,* Docket No. CUM–L–000419–90.

On May 2, 1990, the court granted defendant Spencer Gifts' Petition for Removal to the Federal Court (*Chandler v. Omnicare, et al.,* C.A. No. 90–1859) on the basis that plaintiff's demands for recovery of benefits under the employee benefit plan, and enforcement of rights under the plan, are controlled by the Employee Retirement Income Security Act (ERISA). 29 U.S.C. §§ 1001, *et seq.* (1974). On behalf of Commissioner Fortunato, Deputy Attorney General ["DAG"] Tasy filed a motion to dismiss Omnicare from the Law Division proceeding. On May 25, 1990, evidently unaware that the action had already been removed to the United States District Court, the Law Division issued an Order dismissing Omnicare from the case.

On May 21, 1990, Spencer Gifts filed a motion in the Omnicare receivership proceeding pending before the Chancery Division of the Superior Court of New Jersey. In its motion, Spencer Gifts sought leave to intervene in the Omnicare receivership proceeding pursuant to N.J.Ct.R. 4:33–1 and/or R. 4:33–2. Spencer Gifts sought intervention in that proceeding so that it could simultaneously move to vacate that portion of the Omnicare Rehabilitation Order which enjoins litigation against Omnicare while it is in receivership. Spencer Gifts further moved for leave to file its cross-claims against Omnicare for contribution and indemnification in *Chandler v. Omnicare, et al.,* C.A. No. 90–1859. On behalf of Commissioner Fortunato, Omnicare's Receiver, DAG Stephen Tasy filed papers with the Chancery Division opposing Spencer Gift's motion in all respects.

On July 18, 1990, The Honorable Samuel DeSimone, A.J.S.C., issued an Order declining to grant Spencer Gifts either leave to intervene or leave to file cross-claims against Omnicare at that time. Judge DeSimone also declined to vacate the injunction against litigation contained in the Omnicare Rehabilitation Order at that time. Judge DeSimone further declined to definitely resolve Spencer Gifts' motion but instead adjourned the motion.

This court will consider Omnicare's Fed.R.Civ.P. 12(b)(6) motion to dismiss *Chandler v. Omnicare, et al.,* which is presently before this court upon its removal from the Law Division.

## DISCUSSION

■ Commissioner Fortunato has argued that prosecution of this action is "so contrary to the public interest and so detrimental to Omnicare's creditors, that this act must not be permitted to proceed." *DAG Letter Brief,* July 3, 1990, pp. 4–5. We believe that this court should consider a slightly different question: Whether this court should, *sua sponte,* abstain under the doctrine of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), to avoid disruption to an important, complex state regulatory system. For the reasons that follow, we believe that this court should do so; hence, we dismiss the action.

■ The general thrust of *Burford* abstention permits a court, *on its own motion,* to abstain in order to avoid needless conflict with the administration by a state of its own affairs. 17A Wright, Miller and Cooper, Federal Practice and Procedure, § 4245 (1988). Or, as the Third Circuit has stated, *Burford* abstention is appropriate where the state has created a complex regulatory scheme central to state interests and federal jurisdiction would be disruptive of the state's efforts. *Lac D'Amiante du Quebec v. American Home Assur. Co.,* 864 F.2d 1033, 1043 (3d Cir.1988) [hereinafter, sometimes referred to as *"American Home Assur."*].

In order to adjudicate this issue, we must first discuss the regulatory scheme the New Jersey Legislature has put in place. The New Jersey Legislature, along with over 31 other states, has substantially adopted the Uniform Insurers Liquidation Act. N.J.S.A. § 17B:32–1 et seq. (West

1971) [hereinafter, "Statute"].[2] This comprehensive statute governs Omnicare's receivership proceeding.

## I. The Statutory Framework—Uniform Insurers Liquidation Act—"The Act"

### A. Nuts and Bolts of the Uniform Act

The commissioner monitors the financial health of all domestic insurance companies. The commissioner may institute a delinquency proceeding in superior court seeking a rehabilitation or other appropriate order. N.J.S.A. § 17B:32–2 *et seq.* Grounds for an order include insurer insolvency, refusal to submit its affairs to the examination of the commissioner, or a finding that further transaction of business would be hazardous to its creditors or the public. N.J.S.A. § 17B:32–6.

The court may direct the commissioner to take possession of the property of the insurer, to conduct the business of the insurer, and to take such steps to remove the causes and conditions which have made rehabilitation necessary. N.J.S.A. § 17B:32–7. The commissioner may also apply to the court for an order directing him to liquidate the business of a domestic insurer. N.J.S.A. §§ 17B:32–8, –9.

The liquidation order directs the commissioner to take possession of the insurer's property and to liquidate the business. N.J.S.A. § 17B:32–9. The court shall direct the commissioner to take possession of the assets of the insurer, and the court shall vest the commissioner with the title to all property, contracts and rights of action. N.J.S.A. § 17B:32–9. Further, upon taking possession of the assets of the insurer, the receiver shall, subject to the direction of the court, immediately proceed to conduct the business of the insurer or to take such steps for the purpose of liquidating, rehabilitating, reorganizing or conserving the affairs of the insurer. N.J.S.A. § 17B:32–9.

In addition, the court may issue an injunction restraining the insurer, its officers, directors, and all other persons from the transaction of business or the waste or disposition of its property until the further order of the court.[3] N.J.S.A. § 17B:32–5(b). The court may also issue such "injunctions or orders as may be deemed necessary to prevent interference with the commissioner or the proceeding, or waste of the assets of the insurer, or the commencement or prosecution of any actions...." *Id.*

While the commissioner is collecting the assets of the insurer and protecting the insurer's estate from suits, he also processes claims made against the insurer's estate. The statute provides that all persons who have claims against an insurer shall present them within four months or within such longer time as the court shall prescribe. N.J.S.A. § 17B:32–30. The commissioner's decision to accept or reject a claim is reviewed by the court overseeing the liquidation proceeding. N.J.S.A. § 17B:32–20. The statute also has provisions governing the form of claims, the priority of certain claims, attachment and garnishment of assets, priority of claims for compensation, the allowance of certain claims, and the allowance of secured claims. N.J.S.A. §§ 17B:32–20, :32–21, :32–22, :32–26, :32–28 and :32–29.

### B. Purpose of the Uniform Act

§ 17B:32–23(b) provides:

The Uniform Insurers Liquidation Act shall be so interpreted and construed as

---

**2.** In particular, the New York Legislature has adopted the Uniform Insurers Liquidation Act. N.Y.Ins.Law, § 7408 *et seq.* (McKinney 1985). The New York statute contains a provision identical to the provision in the New Jersey statute, authorizing the Court to enter such injunctions as are necessary. Further, the New York courts have reported several opinions interpreting the statute which have been instructive to this court's analysis.

**3.** N.J.S.A. § 17B:32–5(b) provides as follows:

The Court may, at any time during a proceeding under this chapter, issue such other injunctions or orders as may be deemed necessary to prevent interference with the Commissioner or the proceeding, or waste of the assets of the insurer, or the commencement or prosecution of any actions, or the obtaining of preferences, judgments, attachment or other liens, or the making of any levy against the insurer or against its assets or any part thereof.

to effectuate its *general purpose to make uniform the law of those States that enact it.* To the extent that its provisions when applicable conflict with other provisions of this chapter, the provisions of such act shall control.

N.J.S.A. § 17B:32–23(b) (emphasis added).

Courts have recognized conservation of the assets of an insolvent organization as a valid purpose of the Uniform Act. N.J.S.A. § 17B:32–1 *et seq.; see, e.g., Ballesteros v. N.J. Property Liab. Ins. Guar. Ass'n,* 530 F.Supp. 1367, 1371 (D.N.J.1982), *aff'd,* 696 F.2d 980 (3d Cir.1982); *see also Mathias v. Lennon,* 474 F.Supp. 949, 957 (S.D.N.Y. 1979). In a similar vein, the District Court of New Jersey has also stated, "When the New Jersey Legislature adopted the Uniform Insurers Liquidation Act, it specifically recognized the benefits of centralizing the management over delinquency proceedings in the courts of one state...." *Ballesteros,* 530 F.Supp. at 1370–71. Accordingly, the purpose of the Rehabilitation Order in the case before us is to enable Commissioner Fortunato, as Rehabilitator of Omnicare, to conserve Omnicare's assets and to avoid dissipation of those assets through litigation in various fora.

New Jersey has less than a handful of reported cases on the subject before us; therefore, the approach adopted by the New York courts (which has been implicitly adopted by the New Jersey courts and the Third Circuit) is particularly instructive here. New York courts have consistently recognized the validity of injunctions against litigation as a means of conserving assets for insolvent insurers in receivership. For example, in *Pink v. Title Guarantee & Trust Co.,* 274 N.Y. 167, 8 N.E.2d 321 (1937), the court disallowed contractual offsets in an action by an insolvent mortgage guaranty company against a second guaranty company to recover money paid by the insolvent company, finding that otherwise it would create an unlawful preference in favor of the guaranty company. Similarly, in *Schenck v. Coordinated Coverage Corp.,* 50 A.D.2d 50, 376 N.Y.S.2d 131 (1975), the court held that in a suit by an insolvent insurance company brought to recover excess commissions paid to an agent of the company, the agent's counterclaim against the insolvent company seeking payment of additional commissions was barred by an injunction against litigation contained in the Liquidation Order. *Id.* 376 N.Y.S.2d at 133. *See also Powell v. All City Ins. Co.,* 74 A.D.2d 942, 426 N.Y.S.2d 135 (1980).

The New Jersey courts that have considered the matter have also recognized the validity of injunctions against litigation for insolvent insurers in receivership. For example, in *Zullo Lumber v. King Constr.,* 146 N.J.Super. 88, 368 A.2d 987 (Law Div. 1976), an insolvent New York insurer in liquidation sought an order staying or abating certain actions brought by a number of parties against the insurer in New Jersey. The Law Division held that absent the existence of ancillary receivership proceeding for the insurer in New Jersey, the plaintiffs in the New Jersey cases were obliged to comply with a prior order of the New York Supreme Court enjoining them from prosecuting any action against the insurer other than required filing and litigation in the New York Supreme Court. *Id.* at 94–95, 368 A.2d 987. The Law Division found that the decision to honor the New York Court's injunction order was consistent with the stated purpose of the Uniform Insurers Liquidating Act adopted by both New York and New Jersey. *Id.* The court found that the Act was designed to foster "economical, efficient and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors" by a single receiver under the supervision of one court. *Id., citing Motlow v. Southern Holding and Secur. Corp.,* 95 F.2d 721, 725–26 (8th Cir.1938) (citations omitted).

New Jersey has thus adopted a complex and thorough regulatory scheme to rehabilitate insolvent insurers. Moreover, the New Jersey and New York courts, in applying the Uniform Act, have identified a strong regulatory policy that the rehabilitation of insolvent insurers can best be accomplished through non-interference by outside courts. Against this background, we turn to the abstention issue.

## II. *Burford Abstention*

### A. The Character of the Proceedings

Until March 1988, Omnicare was a privately operated, for profit HMO that provided health care services to subscribers pursuant to the terms of the New Jersey Health Maintenance Organizations Act, N.J.S.A. § 26:2J–1 *et seq.* (West 1973). On March 31, 1988, Kenneth D. Merin, former Commissioner of the New Jersey Department of Insurance, found Omnicare to be insolvent within the meaning of § 17B:32–1(a), in that its liabilities exceeded its assets. Accordingly, Merin commenced proceedings before the Superior Court of New Jersey, Chancery Division, Cumberland County, to place Omnicare in rehabilitation pursuant to the terms of the New Jersey Uniform Act, N.J.S.A. § 17B:32–1 *et seq.*[4] On April 22, 1988, the Honorable Paul R. Porreca, J.S.C., found Omnicare to be insolvent and entered an Order of Rehabilitation of Domestic Health Maintenance Organization with respect to Omnicare.

The court, pursuant to its authority under N.J.S.A. § 17B:32–5, included in the Order of Rehabilitation an injunction prohibiting the maintenance or further prosecution of any legal action against Omnicare:

> All officers, directors, trustees, shareholders members, subscribers, enrollees, agents and employees of Omnicare and all other persons or entities of any nature, including but not limited to claimants, plaintiffs, petitioners and any governmental agencies having claims of any nature against Omnicare including cross-claims, counterclaims and third-party claims are hereby enjoined and restrained from (a) conducting any portion or phase of the business of Omnicare, (b) bringing, maintaining or further prosecuting any action at law or in equity or any other proceeding against Omnicare,

its estate in receivership, the Commissioner and his successor in office as rehabilitator, or the Deputy Rehabilitator appointed pursuant to paragraph two above, (c) making or executing any levy upon the property or estate of Omnicare, and (d) interfering in any way with the Commissioner or his successor in office as Rehabilitator, in his possession of title to the property and assets of Omnicare, or in the discharge of his duties as Rehabilitator pursuant to this Order. All persons or entities of any nature, other than the Rehabilitator also are hereby restrained from commencing, maintaining or further prosecuting any direct or indirect actions against any reinsurer of Omnicare for proceeds of reinsurance policies issued to and treaties or other agreements with Omnicare. Order of Rehabilitation, ¶ 9.

Further, the Order of Rehabilitation also empowers Commissioner Fortunato "to defend suits to which Omnicare or the Rehabilitator is a party, in this State or elsewhere, whether or not such suits are pending as of the date of this Order...." Order of Rehabilitation, ¶ 11(f).

### B. The *Burford* Abstention Doctrine

In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court reinstated the district court's dismissal of an action brought to enjoin enforcement of a Texas Railroad Commission Order granting Burford a permit to drill for oil wells. The Court held that the lower court acted within its discretion in dismissing the complaint, on the ground that the issues involved a specialized aspect of a complicated regulatory system of local law which should be left to the local administrative bodies and courts. The Court emphasized that the regulatory scheme, effected to exploit the vast Texas oil fields efficiently and to protect landowners from having the oil beneath their

---

**4.** Under N.J.S.A. § 26:2J–20, the Insurance Commissioner may commence rehabilitation proceedings against an insolvent HMO. That statute provides:

> Any rehabilitation, liquidation or conservation of a health maintenance organization shall be subject to the law concerning the

rehabilitation, liquidation or conservation of an insurance company as stated in Chapter 32 of Title 17B of the New Jersey Statutes and shall be conducted under the supervision of the Commissioner of Health or where applicable the Commissioner of Insurance....

*Id.*

land drained by adjoining drillers, was a particularly difficult state problem. The Court also noted that the Texas courts were working partners with the Railroad Commission in the business of creating a regulatory system for the oil industry; that the state courts provided thorough judicial review of Commission orders; and that "[t]o prevent the confusion of multiple review of the same general issues, the legislature provided for concentration of all direct review . . . in the State district courts of Travis County." *American Home Assur.*, 864 F.2d at 1033 (3d Cir.1988), *citing Burford*, 319 U.S. at 325–26, 63 S.Ct. at 1103. The Court concluded that federal court participation in this integrated state scheme would only cause confusion and that "[a]s a practical matter, the federal courts can make small contribution to the well organized system of regulation and review which the Texas statute provide." *Id.* at 1043, *citing* 319 U.S. at 327, 63 S.Ct. at 1104. As the Third Circuit further stated,

> *Burford* stands for the proposition that where a state creates a complex regulatory scheme, supervised by the state courts and central to state interests, abstention will be appropriate if federal jurisdiction deals primarily with state law issues and will disrupt a state's efforts "to establish a coherent policy with respect to a matter of substantial public concern."

*Id., citing Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (citations omitted); *see also Allegheny Airlines, Inc. v. Pennsylvania Pub. Util. Comm'n*, 465 F.2d 237, 241–45 (3d Cir. 1972); *see generally* 1A J. Moore, Federal Practice ¶ 0.203[2] at 2140–41 (collecting cases) (1985).[5]

### C. Applying the *Burford* Doctrine

In *American Home Assurance*, 864 F.2d 1033 (3d Cir.1988), the Third Circuit addressed a situation similar to our case. In *American Home Assurance*, the Third Circuit reversed The Honorable Maryanne Trump Barry, U.S.D.J. (D.N.J.), in holding that *Burford* abstention was required. The case involved a civil action by the seller of asbestos against its insurers seeking indemnity for sums it had paid out in connection with asbestos related claims against it.[6] The district court made a liability determination and fixed the amount of damages with respect to the defendant insurers, including Midland Insurers Company, notwithstanding that a New York court, pursuant to New York's Uniform Insurer's Liquidation Act, had ordered Midland into liquidation proceedings and had appointed the New York Superintendent of Insurance as its statutory receiver. On appeal, the Third Circuit reviewed the district court's failure to abstain under *Burford* for abuse of discretion. *Id.* at 1048. The court concluded, nevertheless, that *Burford* abstention was so clearly warranted that it must reverse the district court's decision not to abstain. *Id.* The court listed several reasons for its holding: the regulation of insurance companies unable to meet their obligations entails a strong state interest; New York had enacted the Uniform Act—a detailed, complex scheme; and a "partnership" existed between the New York state courts and the Superintendent of Insurance. *Id.* at 1045.

The general principles enunciated in *American Home Assurance* apply in our case.[7]

---

5. The Third Circuit identified one other factor that courts should consider during a *Burford* analysis: "[F]ederal courts more readily abstain from a case that contains no issue of federal law." *American Home Assur.*, 864 F.2d at 1044, *citing Izzo v. Borough of River Edge*, 843 F.2d 765, 768 (3d Cir.1988) (citations omitted).

6. The federal court based its jurisdiction on diversity of citizenship, 613 F.Supp. 1549, 1554 n. 8 (D.N.J.1985).

7. This court recognizes that distinctions exist between *American Home Assurance* and our case—namely, that the Third Circuit addressed a *New York* liquidation proceeding and therefore conducted its *Burford* analysis based on New York's regulatory scheme. We find that this distinction is inapposite, however, particularly since New York and New Jersey have adopted the Insurers Uniform Liquidation Act, which has as its stated general purpose "to make uniform the law of those States that enact it." N.J.S.A. § 17B:32–23(b).

We begin our analysis assuming that New Jersey's regulation of insurance companies unable to meet their obligations entails the type of strong state interest in which application of *Burford* abstention is appropriate. *Id.* In fact, the Third Circuit stated that "solvent and healthy insurance coverage is an essential state concern." *Id.* Further, as stated above, New Jersey has also promulgated a detailed, complex scheme in this area (namely, the Uniform Act). *See id.;* N.J.S.A. § 17B:32–1 *et seq.* Moreover, the type of "partnership" discussed in *Burford* exists between the New Jersey state courts and the commissioner. *American Home Assur.,* 864 F.2d at 1045. The New Jersey courts issue the orders of rehabilitation or liquidation, enjoin suits against the commissioner to protect the proceeding, and oversee the commissioner's assessment of claims against the insurer's estate. *Id.; see, e.g.,* N.J.S.A. § 17B:32–5.

As the Third Circuit succinctly stated, "In these circumstances, assumption of jurisdiction by the federal court in a suit against an insolvent insurer in [rehabilitation] would be highly destructive of the state's regulatory scheme." *American Home Assur.,* 864 F.2d at 1045 (citations omitted). Just so. Chandler's and Spencer Gifts' continued prosecution of the complaint and cross-claims in this court will result in dissipation of the assets of an insolvent HMO in rehabilitation and will thus undermine Commissioner Fortunato's efforts to conserve those assets, which is the purpose of the rehabilitation proceedings under N.J.S.A. § 17B:32–1 *et seq.* Further, the federal issue present in this case is unresolvable without requiring the court to immerse itself in the technicalities of the state's scheme. *See Izzo v. Borough of River Edge,* 843 F.2d 765 (3d Cir.1988) (citations omitted). This court also finds that retaining jurisdiction only over plaintiff's claim against Spencer Gifts, Inc., would cause this court to risk the duplica-

tion of state court efforts to resolve this dispute. *See* 17A Wright, Miller and Cooper, § 4247 at 117. Last, the greater public interest in preserving Omnicare's assets by avoiding improper preferences and dissipation of those assets through litigation outweighs the interests of Chandler and Spencer Gifts in prosecuting their individual claims. Therefore, this court is acting within its authority when it raises, by its own motion, *Burford* abstention. *Id.* at § 4245.

Further, our conclusion that independent proceedings against an insurer are highly disruptive to the state's regulatory scheme is buttressed by New Jersey law itself. New Jersey has a strong regulatory policy as evidenced by the adoption of the Uniform Act. Further, the court is given the power to issue antisuit injunctions, and the court did so in this case at the request of the Commissioner. The issuance of the injunction indicates that the court and the Commissioner believe that suits against Omnicare would disrupt the proceedings.

Further, a mechanism already exists for presentation of Spencer Gifts' claim to the receivership court. As DAG Tasy stated,

> If Spencer Gifts is unsuccessful in defending the suit brought by Roberta Chandler in which it is a defendant; if Spencer Gifts must pay a money judgment to Ms. Chandler; and if Spencer Gifts still believes that contribution and indemnification by Omnicare is required, it remains at all times free, once that judgment has been entered, to petition the receivership court for leave to file a late claim against Omnicare. N.J.S.A. § 17B:32–30(b).

DAG Letter Brief, July 3, 1990, p. 12. Thus, Spencer Gifts has available to it, in the context of the receivership proceeding, a mechanism for relief (should the need arise and should the state court deny

---

Although jurisdiction in this court is based on a federal question, the Third Circuit has stated that it is only *a factor* to consider in the *Burford* analysis, and it is to be balanced along with other factors. *See supra* note 4, and accompanying text. *See also Izzo v. Borough of River Edge,* 843 F.2d 765, 767 (3d Cir.1988) *citing*

*Alabama Pub. Serv. Comm'n v. Southern Ry.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) (Court applied *Burford* abstention in a case attacking a state regulatory scheme, despite a railroad's assertion of a federal constitutional claim).

Spencer Gifts' motion for leave to file its cross-claims against Omnicare).

## CONCLUSION

For the reasons discussed above, this court dismisses plaintiff's complaint as to defendants Spencer Gifts, Inc. and Omnicare/The HMO, Inc. This court also dismisses the cross-claims for indemnification and contribution filed by defendant Spencer Gifts, Inc. against defendant Omnicare/The HMO, Inc.