946 A.2d 1084 (2008)
400 N.J. Super. 276
AMERICAN WRECKING CORP., Plaintiff-Respondent
v.
BURLINGTON INSURANCE CO., Defendant-Appellant, and
Nia Insurance Group, Defendant-Respondent.
DSM Nutritional Products, Inc., Plaintiff-Respondent,
v.
Burlington Insurance Co., Defendant-Appellant, and
American Wrecking Corp., Defendant/Third-Party Plaintiff-Respondent,
v.
Nia Insurance Group; Torcon, Inc.; New Jersey Economic Development Authority; Technology Center of New Jersey; and DSM Entity, Third-Party Defendants-Respondents, and
V.W. Smith and Wladyslaw Skrzypczak, Third-Party Defendants.
American Wrecking Corp., Plaintiff,
v.
Burlington Insurance Co., Third-Party Defendant-Appellant, and
Nia Insurance Group, Third-Party Defendant-Respondent.
No. A-2213-07T3
Superior Court of New Jersey, Appellate Division.
Argued April 15, 2008.
Decided May 16, 2008.
*1085 Paul F. Clark, New York City, argued the cause for appellant Burlington Insurance Company (Wade Clark Mulcahy, attorneys; Mr. Clark and Denise Fontana Ricci, on the brief).
Lane M. Ferdinand, Springfield, argued the cause for respondent American Wrecking Corp. (Lane M. Ferdinand, P.A., attorneys; Mr. Ferdinand, on the brief).
Alan H. Bernstein, Roseland, argued the cause for respondent NIA Insurance Group (WolfBlock, LLP, attorneys; Mr. Bernstein, of counsel; Mr. Bernstein and Stuart J. Polkowitz, on the brief).
William H. Mergner, Jr., Cedar Knolls, argued the cause for respondent Torcon, Inc. (Leary, Bride, Tinker & Moran, P.C., attorneys; Mr. Mergner and Peter M. Bouton, on the brief).
Patrick A. Robinson, Bridgewater, argued the cause for respondents New Jersey Economic Development Authority and Technology Center of New Jersey (Robinson Burns LLC, attorneys; Mr. Robinson, of counsel; Mr. Robinson and Richard A. Foster, on the brief).
*1086 Charles E. Powers, Jr., Hackensack, argued the cause for respondent DSM Nutritional Products, Inc. (Harwood Lloyd, LLC, attorneys; Mr. Powers, of counsel; Mr. Powers and Paul E. Kiel, on the brief).
Before Judges COBURN, FUENTES and CHAMBERS.
The opinion of the court was delivered by COBURN, P.J.A.D.
Defendant Burlington Insurance Company ("Burlington"), a surplus lines insurer, issued general liability policies to American Wrecking Corp. Under those policies, "an insured" included others for whom American Wrecking was "performing operations."
These consolidated declaratory judgment actions concern claims for insurance coverage by American Wrecking and these additional insureds for whom American Wrecking was performing demolition: DSM Nutritional Products, Inc. ("DSM"), Torcon, Inc., New Jersey Economic Development Authority ("NJEDA"), and Technology Center of New Jersey ("TCNJ").
The underlying personal injury claims were filed by three workers who alleged that they were injured while employed by Island Scrap Metal ("Island") or SECO American Wrecking Corp. ("SECO"), both sister companies of American Wrecking, and both also additional insureds under the policies. Two of the workers alleged they were injured on DSM's worksite due to the negligence of DSM and American Wrecking. The other worker alleged that he was injured at the NJEDA/TCNJ worksite, where Torcon was the general contractor, as a result of the negligence of those parties and American Wrecking.
The insurance polices in force when the accidents occurred contained a "cross liability" coverage exclusion for, among other things, personal injury to an "employee of any insured."
On cross-motions for summary judgment, orders were entered requiring Burlington to provide coverage despite the "cross liability" exclusion. The trial court found the exclusion unambiguous but inconsistent with the insureds' reasonable expectations and public policy. We reverse and remand for entry of summary judgment in favor of Burlington.

I
American Wrecking is a New Jersey corporation involved in high-risk demolition projects. Burlington is a surplus lines insurer. In 2001, Burlington issued a comprehensive general liability ("CGL") policy to American Wrecking. This insurance was obtained by American Wrecking's agent, NIA Insurance Group ("NIA"), a licensed insurance broker in New Jersey, through a surplus lines agent, Partners Specialty Group ("PSG"), that represented Burlington. Coverage under this policy, which did not include the "cross-liability" exclusion, ended on November 14, 2002.
On October 14, 2002, NIA sent an application to PSG for renewal of the CGL policy. On November 18, 2002, PSG provided NIA with a "QUOTE" for issuance of the policy which listed a number of exclusions, including an exclusion for "cross suits." Negotiations ensued during which NIA asked for a number of changes, including deletion of the "cross suits" exclusion. Although PSG agreed to a number of NIA's requested changes, ultimately reducing the premium from about $133,000 to $85,000, it refused to delete the "cross suits" exclusion. The "QUOTE" emphasized that copies of all of the insurance company's forms would be made "available upon request." Had NIA requested the "cross suits" form it would have received *1087 the form entitled "cross liability." After the policy was issued, NIA continued to negotiate for and obtain changes in the coverage provided. This policy provided coverage, with a subsequent extension, from November 24, 2002 to December 24, 2003.[1]
The "cross liability" exclusion reads, in pertinent part, as follows:
EXCLUSION  CROSS LIABILITY
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
This insurance does not apply to any actual "bodily injury", "property damage", "personal injury", or "advertising injury" to:
. . .
3. A present, former, future or prospective partner, officer, director, stockholder or employee of any insured;
[Emphasis added.]
The CGL form includes the following provision:
7. Separation of Insureds
Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
a. As if each Named Insured were the only Named Insured; and
b. Separately to each insured against whom claim is made or "suit" is brought.
The policy also contains this provision defining additional insureds:
ADDITIONAL INSURED  OWNERS, LESSEES OR CONTRACTORS  AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
A. Who is An Insured (Section II) is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.
These provisions appear without change in the third policy, which provided coverage from December 24, 2003 to December 24, 2004.
American Wrecking's contracts with Torcon and DSM required American Wrecking to obtain liability insurance coverage for them from an insurance company licensed to do business in New Jersey, not *1088 from a surplus lines insurer, such as Burlington.
The underlying personal injury claims arose from accidents occurring on the following dates: November 1 and 17, 2003 (both at the DSM site), and July 1, 2004 (at the NJEDA/TCNJ site). The injured parties alleged that their injuries resulted from negligent maintenance of the sites and that at the time of the accidents they were employees of Island or SECO, both sister corporations of American Wrecking, and both additional insureds under the policies.

II
We consider first the insureds' claim, which was rejected by the trial court, that the exclusion was ambiguous and ought to be construed so as to provide coverage.
In general, insurance policies are liberally construed to afford coverage that any fair interpretation will allow. Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537, 582 A.2d 1257 (1990) (citation omitted). But "the words of an insurance policy should be given their ordinary meaning, and in the absence of ambiguity, a court should not engage in a strained construction to support the imposition of liability." Ibid. (citations omitted). Thus, our role does not include writing "for the insured a better policy of insurance than the one purchased." Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529, 562 A.2d 208 (1989) (citation omitted).
When considering an exclusion of coverage, any ambiguity "must be strictly construed against the insurer so that reasonably anticipated coverage is provided." Argent v. Brady, 386 N.J.Super. 343, 351, 901 A.2d 419 (App.Div.2006) (citations omitted). And "the burden is on the insurer to bring the case within the exclusion." Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95, 698 A.2d 9 (1997) (citation omitted). But "exclusions are presumptively valid and will be given effect if specific, plain, clear, prominent and not contrary to public policy." Ibid. (quotation and citation omitted).
The context in which the issue arises is important, and our review must take into account that we are dealing with policies "covering commercial risks procured through a broker, and thus involving parties on both sides of the bargaining table who were sophisticated with regard to insurance." Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 38, 548 A.2d 188 (1988). Nor can we lose sight of the fact that the insureds were engaged in high risk enterprises for which insurance could only be obtained from a surplus lines carrier. See N.J.S.A. 17:22-6.40 to 6.65; R.R. Roofing & Building Supply Co., Inc. v. Fin. Fire & Cas. Co., 85 N.J. 384, 389, 427 A.2d 66 (1981).
With those principles in mind, we turn to the "cross liability" exclusion at issue, which states, in pertinent part, that the insurance does not apply to personal or bodily injuries suffered by an "employee of any insured."
Standing by itself, the phrase "employee of any insured" is crystal clear. In short, "any" does not mean "the" insured, it means "any" insured, which, of course, is its ordinary meaning. In Argent v. Brady, supra, 386 N.J.Super. at 351-52, 901 A.2d 419, we construed an exclusion that referred to "an insured" as meaning "any insured" and found it to be fully enforceable "as it was doubtlessly intended, to exclude from coverage any liability resulting from the business pursuits of a covered person, regardless of whether the person sued was engaged in those business pursuits." In rejecting the insured's construction *1089 of "an" insured, we made the following observation:
That the use of the word "any" could be perceived by some as making the exclusion clearer, does not make the language that was chosen ["an"] ambiguous. Language in a policy of insurance is genuinely ambiguous only if the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.
[Id. at 353, 901 A.2d 419 (quotation and citation omitted).]
And in Rena, Inc. v. Brien, 310 N.J.Super. 304, 321, 708 A.2d 747 (App.Div.1998), we held that the phrase "any insured" was unambiguous.
The insureds claim that ambiguity was introduced into the policy by the clause entitled "7. Separation of Insured," which is quoted above. In essence that clause, more generally referred to as a "severability clause," provides that "[e]xcept with respect to the Limits of Insurance . . . this insurance applies . . . [a]s if each Named Insured were the only Named Insured."
In Argent, supra, 386 N.J.Super. at 353-55, 901 A.2d 419, we considered the effect of a severability clause on a policy exclusion that applies to the acts of "an" or "any" insured. After thoroughly reviewing the decisions in other jurisdictions, we concluded that a
severability clause is not denominated a "coverage provision," and it would be unreasonable to find that it operated independently in that capacity to increase the insurance afforded under the insuring provisions of the policy, or to partially nullify existing coverage exclusions. The purpose of severability clauses is to spread protection, to the limits of coverage, among all the . . . insureds. The purpose is not to negate bargained-for exclusions which are plainly worded.
[Id. at 355, 901 A.2d 419 (quotation and citations omitted)].
Consequently, we reject the insureds' contention that this policy exclusion was ambiguous, and turn to the question of whether it failed to meet the insureds' reasonable expectations or otherwise violated public policy.
In Nunn v. Franklin Mutual Insurance Co., 274 N.J.Super. 543, 549-50, 644 A.2d 1111 (App.Div.1994), we considered application of the reasonable expectations doctrine in the context of commercial policies:
There is some authority for the proposition that "if an insured's `reasonable expectations' contravene the plain meaning of a policy, even its plain meaning can be overcome." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992) (quoting Werner Indus. v. First State Ins. Co., 112 N.J. 30, 35-36, 548 A.2d 188 (1988)). On the other hand, the same Court held in State v. Signo Trading Intern., Inc., 130 N.J. 51, 612 A.2d 932 (1992), that "courts should resort to the doctrine of reasonable expectations only when `the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Id. at 62, 612 A.2d 932 (quoting Weedo [v. Stone-E-Brick, Inc.], supra, 81 N.J. [233] at 246-47, 405 A.2d 788 [(1979)]). The two concepts are not easily reconcilable. The Signo Court did not attempt to distinguish Voorhees.

However, we believe the distinction between the holdings in the two cases is explained by the type of policy being scrutinized by the Court in each case. In Voorhees, the Court was interpreting a homeowners policy, whereas the Signo Court was interpreting a commercial policy. The justification for treating the former more liberally than the latter is *1090 based upon the relative sophistication of the insureds: a homeowner is a less sophisticated consumer than a commercial insured.
We find Nunn persuasive, and therefore conclude that since we are dealing with a commercial policy and since the cross-liability exclusion is unambiguous, the insureds' reasonable expectations were not violated.
We also reject the insureds' claim that the cross-liability exclusion violates public policy. For, as the Court noted in State, Department of Environmental Protection v. Signo Trading International, Inc., 130 N.J. 51, 66, 612 A.2d 932 (1992), "public policy considerations alone are not sufficient to permit a finding of coverage in an insurance contract when its plain language cannot fairly be read to otherwise provide that coverage."
The remaining arguments raised by the insureds are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Reversed and remanded for entry of summary judgment dismissing with prejudice all of the coverage claims against Burlington.[2]
NOTES
[1] NIA's brief argues that the "cross liability" endorsement was not a negotiated term and is different from a "cross suit" endorsement. At argument, NIA put it more forcefully, saying that this endorsement was "snuck" into the policy. Even assuming the endorsements differ, NIA was still bound by the terms of the policy, as was American Wrecking. Edwards v. Prudential Prop. & Cas. Co., 357 N.J.Super. 196, 204, 814 A.2d 1115 (App.Div.), certif. denied, 176 N.J. 278, 822 A.2d 608 (2003). Since NIA continued to negotiate after receiving the policy with the "cross liability" endorsement, and since the accidents happened quite some time later, there was no prejudice and the policy terms govern. We note that NIA's argument on this point included no citation to any authority.
[2] The trial court did not rule on DSM's claim that Burlington's denial of coverage constituted bad faith. Since we have sustained the exclusion on which Burlington relied, the bad faith claim must also be dismissed with prejudice. Pickett v. Lloyd's & Peerless Ins. Agency, Inc., 131 N.J. 457, 473, 621 A.2d 445 (1993).