43 A.3d 1169 (2012)
426 N.J. Super. 96
Josephine GABRIELE, as Administratrix Ad Prosequendum for the heirs-at-law of Salvatore Gabriele, Deceased and Administratrix of the Estate of Salvatore Gabriele; Stephanie Gabriele, a minor by her guardian ad litem, Josephine Gabriele; Pamela Gabriele, a minor by her guardian ad litem, Josephine Gabriele; Giovanni Gabriele, a minor by his guardian ad litem, Josephine Gabriele and Josephine Gabriele, individually, Plaintiffs,
v.
LYNDHURST RESIDENTIAL COMMUNITY, L.L.C., Daibes & Company, Daibes Brothers, Inc., Matt Mechanical, Pyramid Construction & Engineering, JM3 Construction, Alexandre Paiva Construction, Inc., All American Hauling & Recycling, Bravante Automatic Sprinkler, County of Bergen, and Township of Lyndhurst, Defendants. and
Daibes Brothers, Inc., Defendant/Third-Party Plaintiff-Respondent,
v.
International Insurance of Hanover, Third-Party Defendant-Appellant, and
Scottsdale Insurance Company, Third-Party Defendant.
No. A-5257-10T3
Superior Court of New Jersey, Appellate Division.
Argued January 17, 2012.
Decided May 18, 2012.
*1170 Brian D. Barr, Cherry Hill, argued the cause for appellant (Cooper Levenson April Niedelman & Wagenheim, attorneys; Mr. Barr, on the briefs).
Albert N. Montano, Springfield, argued the cause for respondent (Hardin, Kundla, McKeon & Poletto, attorneys; Mr. Montano, of counsel and on the brief).
Before Judges PARRILLO, ALVAREZ and SKILLMAN.
The opinion of the court was delivered by
SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
This is an insurance coverage appeal, which requires us to reconcile an inconsistency between an exclusion contained in the basic coverage provisions of the policy with an exclusion contained in an applicable endorsement to the policy.

I.
Defendant Lyndhurst Residential Community was the owner of a site on which it proposed to construct a building called Riverside Plaza Development. Lyndhurst entered into a contract with defendant Daibes Brothers to be the construction manager for the project.
Lyndhurst also entered into a contract with defendant Bravante Automatic Sprinkler to perform sprinkler work. This contract obligated Bravante to name Lyndhurst and Daibes as additional insureds under its comprehensive general liability policy, which had been issued by third-party defendant International Insurance of Hanover (Hanover). Bravante obtained an endorsement to its policy providing such additional insured coverage.
Salvatore Gabriele was employed by Bravante as its foreman for the sprinkler work it performed for Lyndhurst. On August 3, 2005, a pallet fell off the sixth floor of the building striking Gabriele in the head and killing him.
Josephine Gabriele, as administratrix of Salvatore's estate and administratrix prosequendum, brought this survivorship and wrongful death action against Lyndhurst, Daibes and various other contractors on the job site.
Lyndhurst and Daibes sought coverage from Hanover as additional insureds under the Bravante policy. Hanover disclaimed coverage pursuant to two exclusions in its policy.
Daibes filed a third-party complaint against Hanover seeking a declaration that Hanover was obligated to provide a defense and indemnity for any judgment that *1171 might be entered in the Gabriele action. This third-party complaint was brought before the trial court for decision by cross-motions for summary judgment. The court concluded in a written decision that neither of the two exclusions relied upon by Hanover applied to the Gabriele claim against Daibes and therefore declared that Hanover was obligated to provide Daibes coverage in the underlying action.
During trial, the claim against Daibes was settled for the $1 million liability limit of the Hanover policy, with Hanover reserving its right to appeal the declaration of its obligation to provide Daibes with coverage.[1]
That appeal is now before us. Hanover argues that coverage for Daibes under the policy is precluded by exclusions both for a claim for personal injury to "an employee of any insured" and for any liability for personal injury that does not arise solely out of the named insured Bravante's work. We conclude that the first of these exclusions applies to preclude coverage to Daibes for the Gabriele action. Thus, there is no need for us to consider the second of the exclusions.

II.
Initially, we note that "[e]xclusions in [an] insurance policy should be narrowly construed." Nav-Its, Inc. v. Selective Ins. Co., 183 N.J. 110, 119, 869 A.2d 929 (2005). "Nevertheless, if [an] exclusion is `specific, plain, clear, prominent, and not contrary to public policy,' it will be enforced as written." Ibid. (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95, 698 A.2d 9 (1997)).
The exclusion we conclude is dispositive of this appeal, which is contained in an endorsement entitled "Exclusion-Employees, Persons & Organization," and is referred to by Hanover as the CVX endorsement, provides in pertinent part:
Notwithstanding anything to the contrary contained in:
1. the policy to which this endorsement attaches,
....
It is agreed that this insurance does not apply to "Bodily injury," "Property Damage" or "Personal Injury" to:

(1) An "employee" of any Insured or to any "person" or "organization"
(a) resulting from discrimination based on, but not limited to, race, color, creed, sex, religion, age, national origin, handicap, political or sexual preference, whether or not for alleged violation of any federal, state or local governmental law or regulation prohibiting such discrimination;
(b) arising out of, caused by, or related to the employment practices of any insured including, but not limited to, hiring, negligent hiring or hiring practices, negligent training, or negligent supervision, termination, layoff, disciplinary procedures, promotion and failure to promote;
(c) resulting from sexual harassment by any insured or by any other "employee" of any insured;
(d) arising out of or in the course of, or as a consequence of, employment by any insured;

(e) arising out of or in the course of, or as a consequence of, association with any insured....
[Emphasis added.]
Hanover relies upon subsection (d) of this exclusion.
*1172 In American Wrecking Corp. v. Burlington Insurance Co., 400 N.J.Super. 276, 281, 946 A.2d 1084 (App.Div.2008), we construed a nearly identical exclusion, which stated that "[t]his insurance does not apply to any actual `bodily injury,' [or] `personal injury' ... to [an] ... employee of any insured[,]" to exclude coverage for a personal injury claim by three workers against contractors at an industrial site who were named as additional insureds in the liability policy of another contractor. In rejecting the additional insureds' argument that this exclusion applied only to the named insured, we stated:
Standing by itself, the phrase "employee of any insured" is crystal clear. In short, "any" does not mean "the" insured, it means "any" insured, which, of course, is its ordinary meaning.
[Id. at 283, 946 A.2d 1084.]
Daibes does not dispute that, considered in isolation, the language of subsection (d) would exclude it from coverage under the Hanover policy for the Gabriele fatal accident. However, Daibes advances two arguments why subsection (d) does not apply.

A.
First, Daibes argues that subsection (d) must be read in light of subsections (a), (b) and (c) to exclude coverage only for employment-related claims, such as for termination, discrimination or harassment on the basis of race, religion, sex or one of the other proscribed grounds set forth in subsection (a). Daibes argues that subsections (d) and (e) are simply "catch-all" provisions designed to extend the exclusions provided under subsections (a), (b) and (c) to employment-related claims that would not otherwise fall within the literal terms of those first three subsections.
On an initial review, it may appear incongruous that the exclusion provided by subsection (d), which would apply more frequently than the exclusions set forth in subsections (a), (b) and (c), especially to insureds such as Bravante and Daibes who are involved in construction work, would be set forth in the fourth rather than the first subsection of the CVX endorsement. However, there is a historical explanation for the structure of this endorsement.
In American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 31, 713 A.2d 1007 (1998), the Court was confronted with the question whether an "employee exclusion" similar to the one set forth in subsection (d) excluded coverage for a wrongful termination claim under the Law Against Discrimination, N.J.S.A. 10:5-1 to -49, in the absence of exclusions similar to those set forth in subsections (a), (b) and (c) that specifically address such claims. In a preliminary section of its opinion, the Court indicated that insurance carriers had devised more specific exclusions, such as those set forth in subsection (a), (b) and (c), out of concern that a general employee exclusion, such as the one set forth in subsection (d), would be found not to encompass employment-related claims:
The employee exclusion contained in the Kemper and Michigan Mutual policies [which was similar to subsection (d) of the endorsement in the Hanover policy] is the standard form of employee exclusion first introduced by insurers in the 1970s. See Jonathan S. Reed, Shredding the Employment Exclusion, 152 N.J.L.J. 324 (April 27, 1998). As the number of employment-related discrimination and harassment claims has increased in recent years, the insurance industry strengthened the employee exclusion by inserting specific language barring coverage for injuries arising out of discrimination, termination and harassment of employees.
[Id. at 34, 713 A.2d 1007.]
*1173 The Court ultimately concluded that a general employee exclusion such as subsection (d) should be read to encompass an exclusion from coverage for a LAD wrongful termination claim. Id. at 38-44, 713 A.2d 1007. However, as we subsequently held in American Wrecking, there was never any question in American Motorists that a general employee exclusion applies to a personal injury or wrongful death claim such as the one asserted by the Gabriele estate.
It arguably would have been more logical for the draftsman of the CVX endorsement to have placed the general employee exclusion first and the more specific exclusions for employment-related claims after that exclusion. However, we do not believe that the mere placement of the well-understood general employee exclusion after the new more specific exclusions for employment-related claims is a sufficient reason to give that general exclusion a more restrictive construction than it was given in cases such as American Wrecking when it stood alone unaccompanied by such specific exclusions.

B.
Daibes's second argument why subsection (d) of the CVX endorsement does not exclude coverage for the Gabriele claim is that this exclusion is inconsistent with one of the exclusions in the basic coverage provisions of the policy, which only excludes coverage for a personal injury claim against "the named insured." The section of the Hanover policy upon which Daibes relies in support of this argument provides in pertinent part:
SECTION 1COVERAGES COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
2. Exclusions.
This insurance does not apply to:
....
e. Employer's Liability
"Bodily Injury" to:
(1) An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties relating to the conduct of the insured's business;....
[Emphasis added.]
Daibes argues that "the insured," as used in this section, unlike the term "any insured" used in subsection (d) of the CVX endorsement, refers solely to the named insured Bravante and not to additional insureds such as Daibes, see Argent v. Brady, 386 N.J.Super. 343, 349-52, 901 A.2d 419 (App.Div.2006) (indicating that the term "the insured" is generally understood to refer solely to the named insured), and that this exclusion prevails over the more expansive exclusion contained in subsection (d), or at least creates an ambiguity concerning the scope of that exclusion that should be resolved in its favor.
We reject this argument because the language of the endorsement makes it clear that the exclusions set forth therein prevail over the general coverage provisions of the policy, including any exclusions contained in those provisions. The top of the page containing the CVX endorsement expressly states: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." (emphasis added). By use of the word "changes," the endorsement clearly advised Hanover's insureds that it was making the scope of coverage different than what it would have been under the original policy, and that it was substituting the provisions in the endorsement for those in the basic policy. This conclusion is consistent with the ordinary meaning of the word "change," and unless a contrary intent appears, "the words of an insurance policy should be given their ordinary *1174 meaning." Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990).
Moreover, the endorsement goes on to state:
Notwithstanding anything to the contrary contained in:
1. the policy to which this endorsement attaches

....
It is agreed that this insurance does not apply to....
[Emphasis added.]
Based upon Hanover's use of the phrase "notwithstanding anything to the contrary contained in ... the policy to which this endorsement attaches," the CVX endorsement clearly notified the insureds that it would apply regardless of any seemingly inconsistent provision of the basic policy.
Our conclusion that the exclusion contained in the CVX endorsement is controlling is also supported by the general principle of insurance law that "when an order or endorsement modifies, qualifies or restricts the terms of the original policy, the order or endorsement controls." 2 G. Couch, Couch on Insurance 2d, § 21.22 (2010); see also 4 Eric Mills Holmes, Appleman on Insurance 2d, § 20.1 (1998) ("If any irreconcilable conflict exists between provisions of the policy and provisions of an endorsement, then the latter must control."). The rationale of this principle is that "when a specific form of insurance is provided by an endorsement tailored to meet the particular needs of the insured and the [insurance] company, that language must be followed to carry out the intentions of the parties." St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 524 (3d Cir.1981). Applying this principle, we are satisfied that the CVX endorsement excluding coverage to Daibes for the Gabriele accident reflects the intention of the Hanover policy.

III.
Daibes argues in the final point of its brief that Hanover is "required to provide coverage to satisfy Bravante's contractual defense/indemnification obligation in favor of [Daibes]." This argument was not presented to the trial court on Daibes' motion for summary judgment. Therefore, the argument is not properly before us. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
Accordingly, the summary judgment in Daibes' favor is reversed, and the case is remanded to the trial court for further proceedings in conformity with this opinion.
NOTES
[1] Gabriele's claims against the other defendants were also settled.