**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2490-19

TEDRA BIRCH, JOSEPH
MONACO, SR., and ALL
STATE HOME INSPECTION,
LLC,

     Plaintiffs-Respondents,

v.

THE HANOVER
INSURANCE COMPANY,

     Defendant-Appellant.

_____

Submitted February 8, 2021 – Decided March 19, 2021

Before Judges Sabatino, Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6740-19.

Lewis Brisbois Bisgaard & Smith, LLP, attorneys for appellant (Darcy L. Ibach, of the Illinois bar, admitted pro hac vice, and Brian Deeney, on the briefs).

Harrell, Smith & Williams, LLC, attorneys for respondent Tedra Birch and Albergo Law Group, attorneys for respondents Joseph Monaco, Sr. and All

State Home Inspection, LLC (Kenneth M. Harrell, Daniel J. Williams and Damian L. Albergo, on the joint brief).

PER CURIAM

This appeal involves a dispute over the terms of insurance coverage in a policy provided to a home inspection company. After examining the premises for a home buyer, the inspector issued a written report. The report did not mention any problems with the propane tank's connection to the house's hot water heater. After purchasing the house, the buyer hired a vendor to replace the propane tank. Several days later, the replacement tank exploded, allegedly because of a leaky ball valve on the pipe connecting the tank to the heater.

The explosion severely injured the homeowner and damaged the house. She filed a civil action alleging negligence by various parties, including the home inspector and his company. The inspector and his company sought indemnity and defense from their insurance company. The insurer declined coverage, citing several provisions within the policy documents.

Consequently, the homeowner, joined by the inspection company and the inspector, pursued this declaratory action in the Law Division against the insurer, arguing the claim is covered under the policy language. The trial court construed the policies in favor of plaintiffs, ordering the insurer to provide a

A-2490-19

defense and indemnification in the underlying negligence case. This appeal by the insurer ensued.

For the reasons that follow, we agree the trial court correctly rejected many of the insurer's proffered arguments. However, we reverse the finding of coverage because we agree with the insurer that a policy exclusion for claims "[a]rising out of or based upon . . . flammable materials" disallows coverage for this particular claim because it stems from the explosion of propane gas, a flammable material.

I.

We need not describe the facts and factual allegations in complete detail since our analysis mainly turns on interpreting the language of the insurance policy documents. In performing our appellate review in this coverage setting, we are guided by several well-established principles.

The interpretation of an insurance policy, like other contracts, is a question of law for the court. Hence, we independently review the trial court's construction of the policy documents on a de novo basis. See N.J. Transit Corp. v. Certain Underwriters at Lloyd's London, 461 N.J. Super. 440, 453 (App. Div. 2019), aff'd per curiam, ___ N.J. ___ (2021).

A-2490-19

The scope of that legal review includes deciding whether a contract provision is clear and unambiguous. See Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997). A provision is ambiguous if it is "susceptible to at least two reasonable alternative interpretations." Ibid. (citation omitted). In such instances of apparent ambiguity, the court may consider extrinsic proofs that may "shed light on the mutual understanding of the parties." Hall v. Bd. of Educ., 125 N.J. 299, 305 (1991) (citations omitted); see also Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 270 (2006).

Our courts have long applied a general precept that ambiguities contained within an insurance policy are to be construed in favor of the policyholder and against the insurer. N.J. Transit Corp., 461 N.J. Super. at 454 (citation omitted). An ambiguity arises "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Customized Distrib. Servs. v. Zurich Ins. Co., 373 N.J. Super. 480, 487 (App. Div. 2004) (citing Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)).

Additionally, in general, insurance policies are liberally construed to afford coverage that a fair interpretation will allow. Villa v. Short, 195 N.J. 15, 23-24 (2008); Am. Wrecking Corp. v. Burlington Ins. Co., 400 N.J. Super. 276, 282 (App. Div. 2008). Based on an insurance company's unique expertise in its

field and its unilateral preparation of the industry's "varied and complex instruments," Allen v. Metro. Life Ins. Co., 44 N.J. 294, 305 (1965), a court, to protect the unversed policyholder, must assume a vigilant role in ensuring insurance policies conform to public policy and principles of fairness. Progressive Cas. Ins. v. Hurley, 166 N.J. 260, 272 (2001) (citation omitted).

When, as here, an insurance company relies on an exclusion in the policy for a denial of coverage, it carries the burden of bringing the case within the exclusion. Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 399 (1970). In contrast to provisions extending coverage, which are interpreted broadly, exclusions are read narrowly. Search EDP, Inc. v. Am. Home Assurance Co., 267 N.J. Super. 537, 542 (App. Div. 1993).

That said, where the language of an insurance policy plainly excludes coverage, we are bound to enforce that exclusion. "An exclusion clause serves the purpose of delimiting and restricting coverage." Doto v. Russo, 140 N.J. 544, 559 (1995) (citation omitted). "Exclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" Flomerfelt v. Cardiello, 202 N.J. 432, 441-42 (2010) (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). Where the words used in an exclusionary clause are clear, "a court should not engage in a

strained construction to support the imposition of liability."  Id. at 442 (quoting

Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990)).

II.

With these principles in mind, we turn to the circumstances of this case.

The Inspection

In the fall of 2016, in anticipation of purchasing a single-family residence in Hopatcong, Tedra Birch retained the services of All State Home Inspection, LLC ("All State") and its owner Joseph Monaco, Sr. to perform a home inspection at those premises.

On September 29, 2016, Birch and All State entered into a Pre-Inspection Agreement.  That agreement stated, in relevant part: (1) "a Home Inspection means a visual, functional, non-invasive Home Inspection conducted without operating systems or components which are shut down, inoperable, or not responding to normal operating controls," but including the plumbing and heating systems; (2) the home inspection would be conducted in accordance with the standards of practice set forth in the New Jersey regulations regarding home inspectors, i.e., pursuant to N.J.A.C. 13:40-15;[1] (3) the home inspection was not

---

[1]  The Pre-Inspection Agreement cites to "N.J.S.A. 13:40-15," which appears to be a typographical error, as the Home Inspection Professional Licensing Act is contained in N.J.A.C. 13:40-15.1 to -24 and N.J.S.A. 45:8-61 to -81.

required to determine "future conditions that may occur including the failure of systems and components"; and (4) "any and all claims [arising out of breach of contract and negligence, among others] must be submitted to [All State], in writing, before any repairs are performed, not later than one year from the date of the inspection."

That same day, the home inspection was performed by Monaco. He provided Birch with a fifty-three-page Inspection Report, inclusive of numerous photographs he took of the premises.

The Inspection Report

In his report, Monaco noted he had visually examined numerous portions of the house, including the water heater and plumbing system. He classified these components with codes, designating either: (1) "Inspected (IN)," meaning he "visually observed the item, component or unit and if no other comments were made then it appeared to be functioning as intended allowing for normal wear and tear"; (2) "Not Inspected (NI)"; (3) "Not Present (NP)," meaning the component or unit was not in the home or building; or (4) "Repair or Replace (RR)," meaning "[t]he item, component or unit is not functioning as intended, or needs further inspection by a qualified contractor."

A-2490-19

For the plumbing system, Monaco included a photo of the propane tank that was then on site. Among other things, he undertook to observe: piping materials, supports, and insulation; leaks; "[h]ot water systems including: water heating equipment"; "[f]uel storage and distribution systems"; and operated "all plumbing fixtures . . . except where the flow end of the faucet is connected to an appliance." However, Monaco noted the water was not turned on for inspection, and thus the hot water systems were designated in the report as NI, i.e., not inspected.

Under the "Heating/Central Air Conditioning" section of the report, Monaco specifically noted the "vent pipe for . . . water heater fails to rise 1/4 inch per foot and may need re-locating or a power vent installed. Consult a qualified plumber for repair/replace as needed for safety."

In the "Water Heater" section, Monaco noted the water heater is propane fired. He classified it as IN, i.e., Inspected, and used the same classification for the gas and fuel lines at the unit. However, Monaco noted the vent connector and safety valve were RR, i.e., in need of repair. On that topic, he stated "[t]he existing piping for T&P valve on water heater fails to extend downward to

within six inches of floor.  This is a safety issue and should be repaired.  Consult a qualified person for repair as needed."[2]

Birch's Purchase of the Home and Replacement of the Propane Tank

Allegedly in reliance on the Inspection Report, Birch purchased the property in February 2017.  Nearly a year later, on January 24, 2018, Birch hired a vendor, Combined Energy Services Inc. ("CES") to install a new propane tank at her home, for the purpose of fueling the hot water heater.  The new tank was installed by CES and the old tank removed.[3]

The Explosion

On January 28, 2018, four days after the new propane tank was installed, Birch was at her home when that tank exploded.  As a result of the explosion, Birch suffered severe burns and other allegedly permanent injuries.

An inspection by the police following the explosion revealed a leak in what is known as the "ball valve" on the pipe supplying propane to the water

---

[2]  It is not clear whether this identified safety issue bears upon the claim of a negligent inspection, or whether an entirely different safety issue is involved in the Underlying Action.

[3]  We do not address here whether All State and Monaco have a viable defense in the Underlying Action of a lack of proof of proximate causation because of the post-inspection installation of a new tank.

9

heater. The police report stated it was "very possible the explosion occurred due to a propane gas leak."

The Underlying Civil Action

In April 2019, Birch filed a civil complaint against multiple defendants, including All State and its owner, Monaco, seeking damages for bodily injury, property damage, and economic loss related to the propane explosion at Birch's home ("the Underlying Action").

In an amended complaint, Birch asserted a single claim for negligence against All State and Monaco for: (1) conducting the home inspection in a "negligent manner"; (2) producing an Inspection Report which "contained inaccuracies which contributed to the happening of the explosion"; and (3) Birch's detrimental reliance "upon the inspection and findings" of All State and Monaco when purchasing her home.

The Insurance Policy

Pursuant to N.J.A.C. 13:40-15.8, home inspectors in New Jersey are required to maintain errors and omissions insurance in an amount not less than $500,000 per occurrence. Defendant Hanover Insurance Company ("Hanover")

A-2490-19

issued a miscellaneous professional liability policy,[4] to All State, on January 29, 2019 with an effective policy period from January 29, 2019 to January 29, 2020.[5] The Policy is a $1,000,000 claims-made-and-reported policy. It contains separate endorsements and exclusions, including an Asbestos Exclusion, Signed Pre-Inspection Agreement Endorsement, Professional Home Inspection Services Coverage Endorsement, and General Liability Endorsement.

The Declarations Pages provide in Item 5 that the retroactive date of effectiveness of the Policy is ten years prior, January 29, 2008, and Item 6 states the Policy covers Professional Services, defined as "Professional Home Inspection Services." There is no dispute that All State and Monaco reported Birch's claim after the retroactive date and during the Policy period, and the underlying incident also occurred during the time period covered by the Policy.

Denial of Coverage

Having been sued, All State and Monaco sought coverage from Hanover for the claims made against them by Birch in the Underlying Action.

---

[4] The Policy does not appear to be in a standard industry form issued by the Insurance Services Office ("ISO"). Its pages bear no notation indicating they are from an ISO form, and no brief contends they are.

[5] Henceforth, the aggregate of all the documents issued by Hanover to All State on January 29, 2019 shall be referred to as the "Policy."

On May 16, 2019, Hanover issued a letter denying coverage and refusing to provide a defense to All State and Monaco based on a pollution exclusion contained in an Asbestos Endorsement of the insurance policy and an exclusion contained in the Professional Home Inspection Services Coverage Endorsement for claims arising out of or based on asbestos, fire retardant treatments, toxic or flammable materials, formaldehyde, including but not limited to "Chinese Drywall."

The Present Declaratory Action

Following the coverage denial, Birch brought the present summary coverage action, pursuant to Rule 4:67-1 to -6, against Hanover by filing an Order to Show Cause and Verified Complaint. In this declaratory action, Birch sought to compel Hanover to defend and indemnify All State and Monaco in the Underlying Action as a third-party beneficiary of the Policy. Birch also requested an award of counsel fees and costs. All State and Monaco joined the lawsuit as co-plaintiffs.

The trial court heard oral argument from the parties regarding the Order to Show Cause, and reserved decision. One week later, on January 30, 2020, the trial court issued an oral decision and written order declaring that the Policy provided coverage to All State for Birch's claims in the Underlying Action. The

12

court denied, however, plaintiffs' requests for reimbursement of their previously incurred counsel fees.[6]

The Appeal

On appeal, Hanover asserts several arguments. First, it contends the trial court committed harmful error by ignoring that: (a) coverage under the Hanover Insurance Company Policy Bodily Injury and Property Damage Coverage part requires an "occurrence" committed by the insured, and the occurrence is solely the propane explosion rather than any conduct by the insured; and (b) any coverage for the bodily injury and property damage claim is excluded in the Professional Services Part of the Hanover Policy by Exclusion 6, excluding any claims "arising out of bodily injury or property damage."

Second, Hanover maintains the trial court erred by ignoring that the bodily injury and property damage occurrence arises out of: (1) a propane explosion that is excluded by Exclusion 10, the "toxic or flammable materials" exclusion in the Policy; and (2) the escape of a "pollutant" which is disallowed by Exclusion 4 in the Policy.

Third, Hanover contends the trial court overlooked that the Professional Services Coverage part of the Policy only extends coverage for claims arising

---

[6] Plaintiffs have not cross-appealed the counsel fee denial.

from a wrongful act in the rendering or failure to render "professional home inspection services," which Hanover argues does not include inspection of a hot water system that was turned off at the time of the inspection.

Fourth and finally, Hanover argues the trial court deviated from New Jersey case law, which does not permit the rewriting of insurance policies by the courts to provide coverage where clear policy terms and exclusions exist within a policy.

Analysis

As we have already noted, we are unpersuaded by most of Hanover's arguments of non-coverage. We affirm the trial court's rejection of those arguments, substantially for the reasons expressed by the motion judge.

Addressing Hanover's losing points very briefly, we are first satisfied that there was an "occurrence" here within the scope of the Policy language. The occurrence encompasses the insured's allegedly negligent inspection of the house, which is claimed in the Underlying Action to have a substantial nexus to and, in essence, serve as a "but for" cause of a failure to prevent the subsequent propane explosion.

We are likewise satisfied that Birch's claims for bodily injury and property damage are covered under the Policy, unless some other specific exception

14

applies. Section G of the General Liability Endorsement, which extends coverage for bodily injury and property damage, expressly replaces Paragraph 6 of the general Policy language otherwise disallowing such coverage.

In addition, we agree with plaintiffs that the exclusionary provisions in Section E(4) of the Professional Liability Insurance Policy and Section H(1)(f) of the General Liability Endorsement for claims of damage caused by "pollutants," do not pertain here, when that term is understood with its ordinary meaning. See Nav-Its, Inc. v. Selective Ins. Co., 183 N.J. 110, 124 (2005) ("[T]he scope of the pollution exclusion should be limited to injury or property damage arising from activity commonly thought of as traditional environmental pollution," thus reflecting "the exclusion's historical objective-avoidance of liability for environmental catastrophe related to intentional industrial pollution.") (citation omitted). The explosion of this homeowner's propane tank is not such a traditional "industrial pollution" event.

We reach a different conclusion, however, with respect to the Policy's language excluding coverage caused by "flammable materials." The pertinent passages are as follows.

The Professional Home Inspection Services Coverage Endorsement amends "Section D – Definitions" of the Policy to add the following definitions:

15

**Professional home inspection services** means the non-invasive visual examination of the **readily accessible** installed systems and components of a dwelling, as identified and agreed to in writing by the client and home inspector prior to the inspection process, performed for a fee and the written home inspection report generated.

**Professional home inspection services** <u>do not include</u>:

1. Any architectural or engineering inspections or services or opinions pertaining to the adequacy of any structural system or component; or

2. Inspections performed for the purpose of ascertaining compliance with any laws, codes or regulations; or the failure to inspect for, discover or disclose any noncompliance with such laws, codes or regulations.

[(Emphasis added).]

The same endorsement amends "Section E – Exclusions" of the Policy to provide, in relevant part:

This **policy** does not apply to **claim(s)**:

. . . .

10. Arising out of or based upon asbestos, fire retardant treatments, <u>toxic or flammable materials</u>, formaldehyde, including but not limited to "Chinese Drywall."

A-2490-19

[(Emphasis added).]

This Endorsement amends "Section E – Exclusions" for the entire policy, not merely for the coverage pertaining to Professional Services Coverage.

Plaintiffs point to the fact that the General Liability Endorsement does not contain a flammable materials exclusion. They argue this means coverage for "general liability," as distinct from "professional services," can extend to claims arising from damages caused by an explosion of flammable materials. That argument fails, however, because the General Liability Endorsement does not stand on its own. Instead, as is clearly stated on its first page, the General Liability Endorsement "modifies the following: MISCELLANEOUS PROFESSIONAL LIABILITY POLICY." With respect to exclusions, the General Liability Endorsement literally "replaces" only Paragraph 6 of the Policy, concerning bodily injury and property damage. It does not say anywhere that it replaces or amends the exclusion for flammable materials.

It is quite clear that propane gas is a flammable material. See, e.g., Roche v. Floral Rental Corp., 95 N.J. Super. 555, 560 (App. Div. 1967) (describing propane as "highly flammable"); see also N.J. Dep't of Health, Right to Know Hazardous Substance Fact Sheet: Propane (2015).[7] Moreover, the explosion at

---

[7] Available at https://www.nj.gov/health/eoh/rtkweb/documents/fs/1594.pdf.

Birch's house that caused her harm manifestly "arose out of" or was "based upon" the use of that flammable material within the meaning of those terms in Exclusion 10. As case law instructs, the phrase "arising out of" within insurance policies generally connotes "conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity" in question. Records v. Aetna Life & Cas. Ins., 294 N.J. Super. 463, 468 (App. Div. 1996) (citations omitted). Here, as Birch essentially asserts in the Underlying Action, the explosion originated from, grew out of, and had a substantial nexus with, the propane tank and its allegedly faulty connection to her hot-water heater, which the inspector failed to spot and report.

In sum, the flammable material exclusion is expressed with sufficient clarity in the Policy documents and must be enforced. Flomerfelt, 202 N.J. at 442-43. We reject plaintiffs' alternative argument that the exclusion should be nullified because it allegedly is contrary to the insured's reasonable expectations. For one thing, the reasonable-expectations doctrine does not apply where the policy language is, as we have shown here, unambiguous. Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 208 (2017). It is not the courts' role to rewrite or negate the clear terms of an exclusion.

In addition, under the pertinent regulations, a licensed New Jersey home inspector is not required to inspect propane tanks or underground storage tanks. See N.J.A.C. 13:40-15.16(j)(1)(iii). As his report to Birch indicated, on the day of his inspection Monaco was unable to observe the operation of the hot water heating system fueled by the propane tank because the water was shut off. Thus, even if, hypothetically, the Policy language excluding claims arising from flammable materials was deemed ambiguous, a home inspector could not have reasonably expected to be covered for such claims in this particular situation.

For these reasons, we are constrained to reverse the trial court and grant Hanover's request for a declaration of no coverage. Any issues concerning whether Hanover should be reimbursed for defense costs it may have paid to date are for the trial court to resolve.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2490-19