**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2311-24

BARRY INGRAM and ILEANA
INGRAM,

     Plaintiffs-Appellants,

v.

FARMERS INSURANCE
COMPANY OF FLEMINGTON,

     Defendant-Respondent.

_____

        Argued January 26, 2026 – Decided February 11, 2026

        Before Judges Sabatino and Natali.

        On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2217-23.

        Frank P. Winston (Lerner, Arnold & Winston, LLP) argued the cause for appellants.

        Kristie L. Trifiolis argued the cause for respondent (Trifiolis & Griffin, PC, attorneys; Kristie L. Trifiolis, on the brief).

PER CURIAM

This appeal involves a dispute related to the applicable limits of liability in a homeowners insurance policy issued by defendant Farmers Insurance Company of Flemington to plaintiffs Barry and Ileana Ingram for their Ortley Beach residence. Plaintiffs challenge two Law Division orders. The first granted summary judgment to defendant and the second denied plaintiffs' summary judgment application. Plaintiffs assert the court erroneously found that the policy provided a total limit of $392,000, rather than an additional $78,400, for the covered loss at issue.

Based on our review of the record and the applicable legal principles, we are satisfied that when considered in its entirety the policy language related to the applicable limit of defendant's liability is sufficiently clear and unambiguous. We therefore reject all of plaintiffs' arguments and affirm.

I.

We review the factual record in the light most favorable to plaintiffs as the non-moving party, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995), and note that the following facts are largely undisputed.

The policy consists of four relevant sections. First, it includes a declarations page that details, among other things, the applicable coverage limits. The declarations page instructs plaintiffs to read all portions of the policy

to "ensure the coverages, limits, and rating information listed are correct and that you understand the terms, conditions and limitations that apply." It also states that the limits of liability for the dwelling coverage, designated in the policy as Section I, Coverage A, totals $392,000. The declarations page also notes plaintiffs purchased an optional endorsement, entitled "Increased Special Limit – Section I," for ninety dollars. Notably, directly next to the endorsement's description, there is no indication that the coverage limit is increased, as opposed to two other optional endorsements – the Equipment Breakdown Enhancement and Service Line Enhancement Endorsements – which appear to increase the limits by $100,000 and $10,000, respectively.[1]

Second, the policy includes a homeowners coverage form that details the covered causes of loss, special and supplemental coverage limits, and additional policy provisions. The homeowners coverage form adds to Section I, B, as "an additional policy provision," Building Code or Law (BCL) Supplemental Coverage, designated as Coverage 11. In effect, Coverage 11 provides

---

[1] Specifically, the limit and premium columns for these endorsements are accompanied by an upward-oriented caret. Although the premium column for the Increased Special Limit endorsement reflects the ninety-dollar increase, the limit column is empty. Contrawise, the Equipment Breakdown Enhancement and Service Line Enhancement Endorsements reflect corresponding increases in both the premiums and limits.

A-2311-24

insurance for compliance with building codes and laws that would have been otherwise excluded by operation of the Building Law Exclusion. That exclusion states that defendant does not insure losses related to the "enforcement of any codes, ordinances, or laws, regulating construction, debris removal, demolition, maintenance, or repair, other than those pertaining to safety glazing."

Coverage 11 further specifies the policy "will cover such for an amount determined by applying the applicable factor shown . . . above . . . ." The "applicable factor" referenced is ten percent of the Coverage A limit, or $39,200. Plaintiffs, however, paid an additional ninety dollars to increase the BCL limit to twenty percent of the Coverage A limit, or $78,400, as memorialized in an endorsement appended to the policy and referenced in the declarations, as noted.

Third, it contains common provisions that identify and explain the policy's standard provisions, supplemental coverages, and exclusions. The common provisions form contains Section I, B that adds supplemental coverages. Notably, the introductory language to the Section I, B Supplemental Coverages states those provisions "do not extend or modify any provisions of this policy except to the extent specifically described . . . ." It also clearly provides that "unless otherwise stated, <u>the limits shown for the following are part of, and not in addition to, the limits . . . .</u>" (emphasis added). As an additional policy

provision added to this specific section, the parties do not dispute this preamble applies to Coverage 11.

The section also details additional, numbered supplemental coverages. Several of those provisions contain express language specifying whether the respective coverage limits are altered or amended, consistent with the preamble. For example, Collapse Coverage "does not increase the limit," although the Computers, Computer Media, and Computer Software Coverage and the Credit Card, Forgery, and Counterfeit Money Coverage in paragraphs three and four states they provide for "an additional amount of insurance."

Finally, the policy includes additional applicable endorsements that amend or inform the policy. As noted, this section includes the endorsement for which the plaintiffs paid ninety dollars to increase the BCL coverage. The endorsement specifies the BCL Supplemental Coverage has an "increase in limit" of ten percent, making the "new limit" twenty percent. At the top, the endorsement also clarifies it only "provides for increases in certain special maximum limits of liability shown . . . ."

After a fire damaged plaintiffs' home, they learned that the repair costs exceeded $392,000, based in part on expenses related to compliance with local building codes and laws. Plaintiffs filed a claim with defendant and were

5

reimbursed $392,000, the entire policy limit for the dwelling loss under Section I, Coverage A. They maintained, however, that the policy provided for an additional $78,400 in coverage related to losses due to "extended" building code costs, for which they paid an additional ninety-dollar premium under Coverage 11. Defendant refused plaintiffs' demand, and they subsequently filed a two-count complaint alleging breach of contract and breach of the duty of good faith and fair dealing.

The parties cross-moved for summary judgement and relied exclusively on the policy's terms and conditions to support their respective positions. After considering their arguments and written submissions, the court granted defendant's application and denied plaintiffs' cross-motion. In a February 28, 2025 oral opinion, the court noted the different policy provisions that addressed the BCL Supplemental Coverage and concluded "that the [BCL] supplemental coverages are contained therein and are not addition to" the total limit of liability and held "under this circumstance, the liability coverage for the loss here . . . is $392,000, and there [is] no additional limit to be provided." It further found the defendant complied with all of the terms and conditions of the policy, and "exhausted its obligation under the contract."

With respect to provision in the policy that adds the BCL Supplemental Coverage, the court found it "increase[ed] the coverage, meaning . . . [plaintiffs] are entitled to receive additional protections [t]hat otherwise would [not] have been covered." The court concluded this provision does not discuss "increasing the limits of coverage, only that it extends the protection . . . ." The court also acknowledged, however, that the endorsement later in the policy does discuss "an increase in the limits" from ten to twenty percent but only did so to establish the "limits of exposure" for the BCL coverage. In support, the court specifically relied on the clear and unambiguous language in the preamble to Section I, B and concluded, in light of that language, there is "no example of when the amount of liability is increased for [Coverage] 11 . . . ."

## II.

Before us, plaintiffs reprise their argument that the policy's liability limit is not $392,000 and implore us to "liberally construe" the policy in their favor. In support, they rely on the term "extended" contained in Section 11 that adds the BCL Supplemental Coverage and assert extended "can only mean that the coverage is expanded beyond that which is included the declarations page." As a result, plaintiffs maintain the supplemental coverage to which they paid an

additional ninety-dollar premium provided an additional $78,400, or twenty percent, in limits.

Plaintiffs ground all of their arguments in the well-established policy interpretation principles that if language in a policy of adhesion is ambiguous, it "must be construed in favor of the insured's reasonable expectations." They further assert the court's conclusion that the BCL coverage limits are subsumed within the Section I, Coverage A limit renders the BCL coverage and their ninety-dollar additional premium "unnecessary, misleading, and illusory . . .."

With respect to the language in the other supplemental coverage provisions in Section I, B, including the preamble, plaintiffs contend the term "extended" in Coverage 11 "satisfy[ies] the 'unless otherwise stated' requirement referenced in the preamble of Section [I, B]" and rely on the definition of "extend" in Black's Law Dictionary as including "to expand, enlarge, prolong, lengthen, widen, carry, or draw out further than the original limit." We disagree with all of these arguments.

### III.

Our review is guided by established principles of jurisprudence. We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59

(2015). Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. at 540 (1995)); see also R. 4:46-2(c). If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Furthermore, "[a] trial court's interpretation of an insurance policy's terms is a legal determination, not a factual inquiry, and is accordingly reviewed de novo." AC Ocean Walk, LLC v. Am. Guar. & Liab. Ins. Co., 256 N.J. 294, 312 (2024) (citing Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy, 210 N.J. 597, 605 (2012)). Because the homeowner's policy here is a contract of adhesion, we like other New Jersey courts "give special scrutiny to [such] insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594 (2001).

We also consider "[the] parties' arguments in the context of well-settled principles governing insurance contract interpretation." Birmingham v. Travelers N.J. Ins. Co., 475 N.J. Super. 246, 256 (App. Div. 2023). "An insurance policy 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled,' with undefined terms construed in accordance with their 'plain and ordinary meaning.'" AC Ocean Walk, 256 N.J. at 312 (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010)). "If the language is clear, that is the end of the inquiry." Ibid. (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). Courts do not "engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." Chubb, 195 N.J. at 238 (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273 (2001)). "We have long recognized 'the basic notion that the premium paid by the insured does not buy coverage for all . . . damage but only for that type of damage provided for in the policy.'" AC Ocean Walk, 256 N.J. at 312 (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 237 (1979)).

Further it is "well-established that the coverage sections of an insurance policy are to be liberally construed in favor of the insured, exclusions are to be read narrowly, and ambiguities are to be construed against the insurer." DEB

Assocs. v. Greater N.Y. Mut. Ins. Co., 407 N.J. Super. 287, 293 (App. Div. 2009); see also Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 18 (App. Div. 2022), certif. denied sub nom., 252 N.J. 258 (2022), and certif. denied sub nom., 252 N.J. 261 (2022). "An ambiguity arises in an insurance contract when 'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Birmingham, 475 N.J. Super. at 256 (quoting Weedo, 81 N.J. at 247).

"An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt, 202 N.J. at 441 (citing Kampf v. Franklin Life Ins. Co., 22 N.J. 36 (1960)). When an "endorsement modifies, qualifies or restricts the terms of the original policy, the . . . endorsement controls." Gabriele v. Lyndhurst Residential Cmty., LLC, 426 N.J. Super. 96, 104-05 (App. Div. 2012) (internal quotation marks omitted) (quoting 2 G. Couch, Couch on Insurance, § 21.22 (2d ed. 2010)); see also 4 Eric Mills Holmes, Appleman on Insurance, § 20.1 (2d ed. 1998) (explaining that "[i]f any irreconcilable conflict exists between provisions of the policy and provisions of an endorsement, then the latter must control."). "The rationale of this principle is that 'when a specific form of insurance is

provided by an endorsement tailored to meet the particular needs of the insured and the [insurer], that language must be followed to carry out the intention of the parties.'" Gabriele, 426 N.J. Super. at 104-05 (alteration in original) (quoting St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 524 (3d Cir.1981)).

Ultimately, a reviewing court should seek to support the "objectively reasonable expectations of the parties." Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 35 (1988). Ideally, the plain and ordinary language of the policy should reflect those expectations, but should a reasonable alternate interpretation exist, the ambiguity must be resolved in favor of the insured. See Passaic Valley Sewerage Com'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 608 (2011) ("If the policy terms are clear, we interpret the policy as written and avoid writing a better insurance policy than the one purchased."). "This is so even if a 'close reading' might yield a different outcome or if a 'painstaking' analysis would have alerted the insured that there would be no coverage." Flomerfelt, 202 N.J. at 441 (first citing Zacarias, 168 N.J. at 595; and then citing Sparks v. St. Paul Ins. Co., 100 N.J. 325, 338-39 (1985)). Courts, however, as noted, are again cautioned against rewriting an insurance policy to provide better

coverage for the insured. See Kimber Petroleum Corp. v. Travelers Indem. Co., 298 N.J. Super. 286, 300 (App. Div. 1997).

Applying these principles, we are satisfied the BCL limit is not in addition to, but rather part of, the $392,000 total coverage limit, and thus are convinced the court correctly granted summary judgment in favor of defendants and denied plaintiffs' cross-motion. As the court cogently explained, the policy clearly provides that the supplemental BCL coverage neither alters nor expands the limit beyond $392,000.

Beginning with Section I, B, we note, again, that the preamble expressly provides "the following are part of, and not in addition to the limits shown in the [d]eclarations." (emphasis added). And the applicable endorsement specifies only the "special maximum limits of liability" are amended, and nowhere in that endorsement are the overall coverage limits mentioned or changed.

Finally, Coverage 11, in which the BCL Supplemental Coverage is provided, clearly states that the provision "extend[s]" coverage that would otherwise have been excluded by operation of the building law exclusion in Section I, D. The extension of that coverage is entirely consistent with the Black's Law Dictionary definition relied upon by plaintiffs because it

"expand[s]" and "enlarge[s]" the otherwise excluded coverage. See Black's Law Dictionary 960 (12th ed. 2024).

We also note that the other supplemental coverages in Section I, B similarly use the word "extended," yet, unlike certain of those provisions, the BCL coverage does not state that its limit "is an additional amount of insurance," as it did with the Computers, Computer Media, and Computer Software Coverage and the Credit Card, Forgery, and Counterfeit Money Coverage. Nor does the declarations page state or imply that the BCL coverage is in addition to the stated dwelling limits as it did with respect to the Equipment Breakdown Enhancement or Service Line Enhancement Endorsements. In light of all of the policy's relevant provisions, read in context, we are convinced plaintiffs received expanded BCL coverage with an increase limit from ten percent to twenty percent as a result of paying the additional premium. AC Ocean Walk, 256 N.J. at 312 (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010)). We therefore disagree that plaintiff had a reasonable expectation of receiving an additional $78,400 in insurance proceeds in addition to the Section I, Coverage A $392,000 dwelling limit. Passaic Valley Sewerage Com'rs, 206 N.J. at 608.

We also reject any contention that our interpretation of the policy renders the BCL coverage illusory. AC Ocean Walk, 256 N.J. at 312 (quoting Weedo,

14

81 N.J. at 237). As defendant correctly explains, had plaintiffs' loss not exceeded the $392,000 coverage limit, the expanded supplemental BCL coverage would have been more robust, providing up to an additional twenty percent or limits, to a maximum of $78,400. For example, if plaintiffs' loss had been $170,000, with $70,000 of those losses separately attributed to BCL expenses, defendant would have been obligated to pay $114,000, representing the $100,000 in Part A coverage plus twenty percent, or $14,000, in the "expanded" BCL coverage, the limits of which were increased from ten percent to twenty percent as a result of plaintiff's additional ninety-dollar premium.

To the extent we have not specifically addressed any of the parties' remaining arguments, it is because we have determined they lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2311-24